SCHWARTZER et al., Plaintiffs In Error, v. GEBHARDT et al.

### Division Two, June 12, 1900.

Coterminous Landowners: AGREEMENT AS TO BOUNDARY: SURVEY: ACQUIESCENCE. Where the owner of one-half of a lot had it surveyed, and thereupon notified the owner of the other half that he had about three feet of his lot in possession, and they agreed that the line as located by this surveyor should be the true dividing line between them, and one of them built a fence on this line with the knowledge of the other and without objection from him, it will be *held*, that, the line having been agreed upon and the three-foot strip held for more than ten years by the one who had it in possession at the time the agreement was made, any verbal agreement thereafter made by him to buy the other a three-foot strip on the opposite side of his half of the lot in lieu of this strip so held by him, did not have the effect of annulling the line thereupon agreed upon, and hence that that other could not recover the three-foot strip by suit in ejectment.

Error to St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*T. Percy Carr* for plaintiffs in error.

(1) The possession of coterminous proprietors under a mistake or in ignorance of the true line, and without intending to claim beyond the true line, will not work a disseizin in favor of either. Finch v. Ullman, 105 Mo. 255; Schad v. Sharp, 95 Mo. 573; Crawford v. Ahrnes, 103 Mo. 88; Houx v. Batteen, 68 Mo. 84; St. Louis University v. McCune, 28 Mo. 481; Battner v. Baker, 108 Mo. 311. (2) Where two adjoining proprietors are divided by a fence, which they suppose to be the true line, each claiming only to the true line, they are not bound by the supposed line, but must con-

form to the true line when ascertained. Jacobs v. Moseley, 91 Mo. 457; Schad v. Sharp, 95 Mo. 573; Battner v. Baker, 108 Mo. 311; Crawford v. Ahrnes, 103 Mo. 88. (3) Where adjacent proprietors hold possession up to a dividing fence, and without claiming or intending to claim beyond the true line, the possession of the one is not adverse to the other. Krider v. Milner, 99 Mo. 145; Skinker v. Haagsma, 99 Mo. 208; McWilliams v. Samuel, 123 Mo. 659; Brummell v. Harris, 148 Mo. 430.

*C. S. Broadhead* for defendants in error.

(1) Instructions must be read together as a whole, and, when consistent, their meaning is to be collected from the whole context, and not from detached instructions or phrases in them. Reilly v. Railroad, 94 Mo. 600; State v. Matthews, 98 Mo. 125. (2) Where coterminous owners, in ignorance of the true dividing line, fix upon a line as the division and act upon such determination, each is barred from afterwards claiming beyond said line, and the agreement is binding upon those claiming under them. Brummell v. Harris, 148 Mo. 441; Jacobs v. Moseley, 91 Mo. 457.

BURGESS, J.—This is ejectment for the possession of a strip of ground three feet and one and one-fourth inches wide, and one hundred and eighteen feet in length. The answer is a general denial, and a plea of the statute of limitations. The case was tried by the court, a jury being waived. Defendants had judgment, from which plaintiffs, after an unavailing motion for a new trial, bring the case to this court by writ of error for review.

Defendants in error now move the court to affirm the judgment of the court below for failure of plaintiffs in error to deliver to them an abstract of the record, setting forth so

much thereof as is necessary to a full and complete understanding of all the questions presented for decision as required by rules twelve and thirteen of this court, and for failure to file such abstract.

The rules of this court require that "the abstract must set forth a copy of so much of the record as is necessary to be consulted in the disposition of the assigned errors" and that "the evidence of witnesses shall be stated in a narrative form, except when the questions and answers are necessary to a complete understanding of the evidence." [Rule 13.]

While the controversy is over the location of the boundary line between two coterminous proprietors, all the evidence adduced was by the plaintiffs, with the exception of the testimony of two witnesses who testified in behalf of defendants to a matter of little importance, and as the only questions presented by the record for review, are in regard to the instructions, and the sufficiency of the evidence to authorize them, we think the abstract sets forth enough of the record to an understanding and disposition of the case. The motion will therefore be overruled.

Plaintiffs and defendants own respectively the west and the east half of lot No. 11, of City Block No. 2136, in the city of St. Louis, and plaintiffs contend that defendants are in the possession of a strip of three feet and one and one-fourth inches in width, and one hundred and eighteen feet in length of this lot.

Both parties have legal title to their respective lots, plaintiffs to the west half, and defendants to the east half of said lot eleven. Plaintiffs derived title from Louis Luth, and defendant from George Robinson.

In 1871, when Luth, plaintiff's grantor, wanted to build his house in the rear of his lot, he had the lot surveyed by the city surveyor, and it appeared from the survey furnished him by that officer, that Robinson's slaughter-house, fence,

chicken-coops and water-closet, in the rear of the Robinson lot, were all over the line on Luth's property. As soon as the line was run, and this fact was developed, Robinson immediately set to work to remove his fence, chicken-coop, slaughter-house and water-closet, so as to conform to the line as located by the surveyor. Luth testified that while everything was moved in the rear for the purpose of allowing him to build on the line on that portion of his lot, as he did not intend at that time to build in the front he did not ask Robinson to move his meat-shop, which was on the front of the Robinson lot, and also found to be over the line, but that it was agreed by Robinson that he would move whenever requested to do so, or whenever the ground was needed to build on. That he then built a brick dwelling house, the east wall of which was on the line agreed upon between him and Robinson as the true line. He further testified that sometime about 1882 there was a new survey from which it appeared that Robinson was over the line about three feet, on his ground, and that Robinson came to him and informed him to this effect and suggested that he (Robinson) should buy the same number of feet for Luth, on the other side of Luth's lot, in lieu of the strip which he occupied, so that both parties might remain where they were, without the necessity of moving, and that it was agreed that Robinson should go to see Mr. Ghio (a real estate agent) and see whether the three feet on the other side could be bought for that purpose. Luth stated also that it was agreed between them that Robinson was either to buy for him the "other three feet," or was to give up the three feet of Luth's ground occupied by him, whenever he was requested to do so by Luth. That on a subsequent occasion, when asked whether he had seen Mr. Ghio, Robinson said that Mr. Ghio was out of the city at the time; and that before anything was done in the matter, both Robinson and Luth sold out

to the present owners, plaintiff and defendant herein. Luth said that Robinson was always ready to move to the true line upon request, during the whole time Luth and he were the owners of the property.

Robinson, in his deposition, stated that when he was informed that he was over the line, he expressed his willingness to move at any time. He stated that "during the time I occupied the building on the east half of lot eleven, the owner of the west half (Louis Luth), came to me and said I occupied a certain number of feet (I have forgotten the amount). I said if that is so, I am ready to move at any time. He said all right, when I want it I will let you know."

The court of its own motion declared the law to be as follows:

"1. If the court sitting as a jury finds from the evidence that prior to the time when the plaintiff and defendant acquired respectively the west and the east half of lot No. 11 mentioned in the evidence the then owners of the lot undertook to ascertain the true dividing line between the same and did then and there fix and determine the same, and that thereafter each held possession of the respective portions of said lot owned by them, to said line so agreed upon or ascertained, and that such possession was continued from thenceforward for a period of ten years or more prior to the institution of this suit; and if the court further finds from the evidence that said line so fixed and determined was co-incident with the west line of the strip of ground sued for in this case, then the plaintiff is not entitled to recover."

The court at the request of defendants declared the law to be as follows:

"2. The court declares the law to be that adverse possession for a period of ten years will transfer title, whether that period runs to the time of action or terminates sooner, if the parties against whom such possession is held are not under any disability during such period.

"3.   If the evidence shows that the defendant and those under whom they claim, have been in open; notorious, uninterrupted, exclusive and adverse possession of the premises in controversy for a period of more than ten years preceding the institution of this action, the finding must be for the defendants.

"4.   The court declares the law to be that a proposal from one in the possession of land to buy out the holder of the true title does not necessarily amount to a recognition of this title or an acknowledgment that the possession is not adverse."

To the giving of each of said declarations of law plaintiffs duly excepted.

It is well settled that the possession of coterminous proprietors under a mistake or in ignorance of the true line, between them and without intending to claim beyond the true line, will not work a disseizin, and set in motion the statute of limitation in favor of either, but it is equally as well settled, that when such proprietors, in ignorance of the true line, fix and agree upon a permanent boundary line, and possession is taken accordingly, the agreement is binding upon them, and those claiming under them. [Jacobs v. Moseley, 91 Mo. 457.]   Such an agreement is not within the statute of frauds.   [Taylor v. Zepp, 14 Mo. 482; Blair v. Smith, 16 Mo. 273; Turner v. Baker, 64 Mo. 218; Acton v. Dooley, 74 Mo. 63.]   Nor is it necessary that such an agreement should be shown by direct evidence, but it may be inferred from the acts and conduct of the parties, and their long acquiescence and recognition of the line established as the true line.

The evidence showed that Luth with a view of building upon the rear end of his lot had it surveyed by the city surveyor and the line between him and Robinson located.   Luth testified that it was then agreed between them that the line as thus located should be the true line between them.   Robin-

son's testimony was not in conflict with or contradictory of the evidence of Luth but is confirmatory thereof, in that, it conclusively showed that he moved some of his out buildings which were partly upon Luth's ground according to this line, back upon his own ground.

The evidence also showed that Luth builded a fence upon this line, and also a brick house on the rear end of his lot, the east wall of which was upon this line, with the knowledge of Robinson, and in so far as disclosed by the record, without any objection from him. The line having been agreed upon any verbal agreement that Luth and Robinson may thereafter have made by which Robinson was to buy three feet of ground for Luth on the adverse side of his lot in lieu of the strip in question, so that both parties might remain where they were, without the necessity of moving, which was never consummated, did not have the effect of annuling the line theretofore agreed upon by them.

We find no substantial objection to the declarations of law given by the court. Finding no reversible error in the record we affirm the judgment. *Gantt, P. J.*, and *Sherwood, J.*, concur.