## THOMAN v. GROSS.

BOUNDARIES — ESTABLISHMENT — PRACTICAL LOCATION — AGREE-
MENT OF PARTIES—CONTINUATION AS AGREED UPON.

Where adjoining landowners joined in the erection of a build-
ing, with a party wall on what was supposed to be the line
between their lands, but before the walls were completed
were led to doubt the accuracy of their line, whereupon, to
save the cost of tearing down the walls, they agreed to let
the walls stand where they were and go on and complete the
building, there was not the establishment of a disputed
boundary line which should be held to apply to the entire
length of the line, but an agreement to disregard the true
line which did not affect the remainder of the land.

Appeal from Ingham; Wiest, J. Submitted April
17, 1907. (Docket No. 103.) Decided May 18, 1907.

Bill by Frederick Thoman against John G. Gross
to enjoin an encroachment. From a decree dismissing
the bill, complainant appeals. Affirmed.

*Thomas, Cummins & Nichols*, for complainant.

*Rollin H. Person*, for defendant.

HOOKER, J. The complainant, Thoman, and Barker
& Parker, who are defendant's grantors, joined in the
erection of a building comprising three stores, the north
one belonging to complainant and the others to them; the
parties owning the north one-third and the south two-
thirds of lot 3, block 83, in the city of Lansing, respect-
ively. The record conclusively shows that the partition
wall between the stores of the complainant and the de-
fendant is about 15 inches too far south, and to that extent
is over upon the south two-thirds of lot 3. A year or two
after the completion of the building, the complainant,
Thoman, built a small frame addition to the rear of his

building, with a platform and stairway leading from the second story to the ground, and he has since used them. In 1902 the defendant, Gross, became the owner of the premises previously owned by Barker & Parker, and began the erection of a platform, as a part of a projected building, which extended north of the line of the partition wall. The accompanying plat shows the situation of the

# N.

## Lot 2

True line between lots 2 and 3

| Barn | | Addition | N. Brick Wall |
| | | | THOMAN |
| | | | Correct S. line of N. 1-3 of lot 3 |
| Gross' Platform | | | Party Wall |
| | | | GROSS |

## Lot 3

Gross' S. Wall

## Lot 4

premises.   The building was constructed about 1885, and the lots in the rear have since been used by both parties indiscriminately, except that Thoman has had exclusive use of his barn and stairway. Gross began the erection of a building a year or two ago, when this bill was filed to restrain it, claiming that the boundary line between the north one-third and south two-thirds was settled for the entire length of the lot when the partition wall was erected, and that the platform encroached upon complainant's premises.

It is plain that, when these walls were started, the owner relied upon Appleton's stake as marking the north line of lot 2.   Before the walls were completed, however,

they were led to doubt its accuracy. They did not measure again, nor does it appear that they were convinced by Appleton's reassurance; but, acting upon the fact that the buildings were partly erected, and the cost attendant upon tearing down and changing the location of the walls, they agreed to let the walls stand where they were and go on and complete the building. This is not inconsistent with a mutual knowledge that the walls were not upon the proper lines, and an agreement to disregard the fact, which agreement would be void under the statute of frauds. Thoman certainly knew it soon after, for he testified:

"That is my recollection, but nothing beyond the cellar walls. There was an old fence between me and Dr. Haze. We were not much south of that fence. In excavating the ground caved down, and I think the fence fell in. I know from personal knowledge that we were south of the fence. I always understood that we were too far south. My barn has since been built north of the line of that wall, I don't know just how far. It comes up very close to the old line. That barn was built two years ago. Appleton started to measure from Michigan avenue. I don't know whether he staked the middle of the center walls or not. I know he staked the north and south corners of the stores. I never knew, before I heard Mr. Collar testify today, that the store was more than 66 feet wide. I don't know how it became so. We got Appleton to fix where the lines of our store should be. He had a man to assist him in the survey. Messrs. Barker & Parker understood, also, that the stores were too far south; that is, we understood that it was reported. We talked it over: 'Why, here, this would be a great note, if we were too far south. Now, if that is the case, we had better find out.' So we got Appleton a second time. I don't think he went over his survey. He simply came down there and said, in his emphatic way—said that those were the lines. 'You build there, and you are all right. It don't make any difference what anybody else says. I know what I am about.'

"*Q.* There wasn't any dispute between you and Barker & Parker?

"*A.* Why, not any dispute; but we talked the matter over. We said: 'We will go on and build here now. We have started, and we will build.'"

He has since claimed land north of the line of the north wall, and built a barn upon it, so that he now claims somewhere near two feet more land than his deed conveyed. We therefore conclude that this was not the establishment of a disputed boundary between the premises of these parties, which should be held to apply to the entire length of the line, but, on the contrary, an agreement to disregard the true line, wherever it might be, for the purpose of erecting the buildings of the parties. The remainder of the land, west of the building, was not affected by it.

The decree is affirmed.

McAlvay, C. J., and Carpenter, Ostrander, and Moore, JJ., concurred.