BLANK *v.* AMBS.

1. BOUNDARIES—MUTUAL MISTAKE—ACQUIESCENCE—ADVERSE POSSESSION.

   Where parties attempt to find true line and are mutually mistaken, subsequent acquiescence under mistake of fact does not establish boundary, at least unless continued for statutory period.

2. SAME—INJUNCTION—LINE FENCE.

   In suit to enjoin tearing down of line fence, finding of trial court that boundary had been established by acquiescence for more than 15 years, *held,* not supported by testimony.

Appeal from Jackson; Williams (Benjamin), J. Submitted October 26, 1932. (Docket No. 6, Calendar No. 35,933.) Decided December 6, 1932.

Bill by Rose Blank, as survivor of herself and husband, against Andrew Ambs and another to enjoin destruction of fence on the alleged boundary line. Decree for plaintiff. Defendants appeal. Reversed, and bill dismissed.

As to effect of acquiescence in boundary lines, see annotation in 4 L. R. A. 643; 69 A. L. R. 1430.

*H. A. Kinch,* for plaintiff.

*Rosenburg & Painter,* for defendants.

FEAD, J.   Plaintiffs had decree restraining defendants from tearing down a line fence, which the court held established a boundary by acquiescence for more than 15 years.   Plaintiff John Blank died after the hearing.

An old rail and wire fence ran between the properties for many years prior to 1909 and had become quite dilapidated.   The land west of the fence was owned by James Donnelly for some 20 years, he sold to Ella Anspaugh in 1914, and she to plaintiffs in 1922.   Defendants bought the east parcel in 1909.   Both parcels along the fence line at times were pasture lands, and on the north end were covered with brush.

The testimony does not show who built the fence nor whether it was recognized as a boundary by the adjoining owners prior to 1909.   It merely shows the existence of the fence, that it was a continuation of one farther south, and that there was no dispute of any sort between defendants and Donnelly or the Anspaughs regarding it prior to 1915.

In 1915 the Anspaughs desired to build a new fence as the old one did not hold stock.   Mr. Anspaugh, representing his wife, talked with Ambs as follows:

"When I got ready to put this fence up, I said, shall I put up the fence where this old fence is, and he didn't know whether it was just exactly right or not, I presume, so we measured it from the man on the other side of the fence, Joe Green.   We went and found the line fence and measured across to where that fell, and it was so near the place, he said, go ahead and put up the fence where the other old fence was, and that is what I did."

Mrs. Anspaugh testified that the land was measured at Ambs' request, so both parties would be satisfied. It was measured with a 16½-foot pole from a description of Ambs' land. The Anspaughs built a new fence substantially on the line of the old one, and they and defendants had no subsequent dispute about it nor made reference to it.

Blank testified that after he purchased, Ambs told him the fence encroached on Blank's land about nine feet. Blank told Ambs he wanted a survey, but the testimony was not pursued to a definite statement of his purpose, whether he intended to claim the nine feet or not. We need not consider whether this testimony broke a chain of acquiescence.

The north end of the property along the fence is marshy and touches the lake. Defendants sold some lots on the shore, had them surveyed, and found that the fence was not on the line, but that the boundary was 66 feet west of the fence along the lake shore and 52 feet on plaintiffs' south line. They tore down the fence erected by the Anspaughs and another built by plaintiffs in 1928, and threatened to destroy any other that should be erected.

The record presents no showing that any adjoining owner claimed to the other that the fence was on the boundary except that Anspaugh and Ambs so located it after measuring. Anspaugh said it was located as a permanent line fence, while Ambs, who denies that they measured it, said it was agreed the fence could be built on the site of the old one temporarily and until a survey was made. The court accepted Anspaugh's version.

Plaintiff relies on the doctrines, both of acquiescence in a line fence for 15 years and settlement of a doubtful boundary by agreement, as laid down in *Hanlon* v. *Ten Hove*, 235 Mich. 227 (46 A. L. R.

788); *Renwick* v. *Noggle*, 247 Mich. 150; *George* v. *Daniels*, 253 Mich. 293; and the earlier cases cited therein.

The cases are readily distinguishable on the facts. At bar, the survey was made from the calls of the deed, without reference to the fence, and the latter was not a monument. There was no doubt or dispute of the boundary, resolved by agreement. There was no showing that prior to 1915 there had been a claim by either adjoining owner, acquiesced in by the other, that the fence was on the boundary. *Dupont* v. *Starring*, 42 Mich. 492. The lack of such showing, with the condition of the fence, at least balances any inference of acquiescence which might be drawn from its location near the true line.

The fence first took on a definite status in 1915, destroying the continuity of the former condition, when the parties measured from a description of defendants' land and located what they thought was the true boundary. Thereafter they acquiesced in the fence, not as marking an unknown or doubtful boundary agreed upon, but as establishing the true boundary. Where the parties attempt to find the true line and are mutually mistaken, subsequent acquiescence under the mistake of fact does not establish the boundary, at least unless continued for the statutory period. *Thoman* v. *Gross*, 148 Mich. 505; *Cronin* v. *Gore*, 38 Mich. 381; 9 C. J. p. 240; 4 R. C. L. p. 131; *Schraeder Min. & Manfg. Co.* v. *Packer*, 129 U. S. 688 (9 Sup. Ct. 385); *Schwartzer* v. *Gebhardt*, 157 Mo. 99 (57 S. W. 782); *McAfferty* v. *Conover's Lessee*, 7 Ohio St. 99 (70 Am. Dec. 57); *Bemis* v. *Bradley*, 126 Me. 462 (139 Atl. 593, 69 A. L. R. 1399); *Cummings* v. *Williams* (Tex. Civ. App.), 269 S. W. 845; *Huddart* v. *McGirk*, 186 Cal. 386 (199 Pac. 494); *Purtle* v. *Bell*, 225 Ill. 523 (80 N. E. 350).

The testimony did not show the elements of establishment of a boundary by acquiescence.

The decree must be reversed, and the bill dismissed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.