## ALLEN v. LEWIS.

(No. 925; Decided January 11th, 1919; 177 Pac. 433.)

APPEAL AND ERROR—NEW TRIAL—AMENDMENT—RECORD ON APPEAL—
ADDITIONS TO RECORD—REVIEW—REPEAL—STATUTES—CONSTRUCTION
—INTENT — HEARING — TIME — TIME FOR TAKING APPEAL — JUDG-
MENT—PRIOR ADJUDICATION—MATTERS DETERMINED—REVERSAL—
GROUNDS OF APPEAL—INSUFFICIENCY OF EVIDENCE—WATERS AND
WATER COURSES—LICENSE—ADVERSE USE—ADVERSE POSSESSION—
POSSESSION UNDER MISTAKE—TRIAL—FINDINGS OF FACT AND CON-
CLUSIONS OF LAW—INCONSISTENCY OF FINDINGS AND CONCLUSIONS.

1.  Under Laws 1917, Ch. 32, Section 10, authorizing court to
    award new trial to an appellant on the appeal record and
    specification of errors filed, within 15 days after notice
    from clerk, order granting new trial, entered after the 15
    days, was properly amended to show that new trial was
    considered within time, but hearing by consent of parties
    was had after the 15 days.

2.  That an appeal from an order granting a new trial under
    Laws 1917, Ch. 32, authorizing court to award new trial
    to appellant on appeal record and specification of errors,
    has been filed in the Supreme Court, does not deprive the
    trial court of the right to amend the order by the addition
    of facts *nunc pro tunc*.

3.  Where an order amends an order granting a new trial, it
    may be brought into the record on appeal on a party's
    application.

4.  Where an amendment of an order for new trial appealed
    from is incorporated into the record on appeal on a party's
    application, the record need not be returned for correction,
    since, under Supreme Court rule 12 (104 Pac. xii), omis-
    sions may be incorporated by requiring the clerk to certify
    thereto, or by granting leave to file a duly certified copy.

5.  Laws 1917, Ch. 32, providing for a review by direct appeal
    from an order granting or refusing a new trial, does not
    repeal the provisions for review of a cause on error.

6.  An affirmative statutory provision relating to the time or
    manner of performing official acts, unqualified by negative
    words, is directory rather than mandatory, though it is a
    question of intention to be ascertained from a considera-
    tion of the entire act, its nature, object, and consequences
    of construction.

7.  The provision of laws 1917, c. 32, authorizing court to
    award new trial to an appellant on the appeal record and
    specification of errors filed, that review of record must be

had in 20 days, may be waived by consent, and the record retained in the trial court until the expiration of the extended time.

8. Where, under Laws 1917, c. 32, Sec. 10, authorizing court to award new trial to an appellant on appeal record and specification of errors, within 20 days after filing of specifications, the court granted a new trial, but by consent of parties order was not made until after the 20 days, such action did not preclude appeal by other party, it being provided that an appeal might be taken from the order granting the new trial.

9. A prior adjudication for plaintiff against defendant's assertion of title to the land, in a suit by plaintiff against defendant to recover the possession of crops grown by defendant on such land, did not bar defendant, in a subsequent suit by plaintiff for trespass in maintaining a flume and ditch across plaintiff's land, from asserting title to the right of way, since he might possess a right of way without owning the land.

10. To justify a reversal, in the absence of a record showing of the reasons on which the trial court acted in granting a new trial to plaintiff, there must be nothing in the specifications of error which would entitle plaintiff to a new trial.

11. In trespass for maintaining a flume over plaintiff's land for which defendant claimed to have a right of way by consent of a prior owner, new trial to plaintiff on ground that evidence did not show that such consent was given with full knowledge of the location of the true line held not error.

12. Where one locates a ditch and flume on another's land with consent and permission, and relies on the license therefor, he cannot claim a right of way by adverse possession.

13. Adverse possession cannot be based entirely on possession under a mistaken belief that a division fence built by claimant was on the true line.

14. In an action for trespass by the maintenance of a flume over plaintiff's land, claimed by defendant to be maintained by consent of former owner, findings of fact that such owner consented, and that defendant's use of the ditch and flume was adverse to such former owner, and conclusions of law that defendant's entry was under license, and that defendant had obtained title by adverse possession, were inconsistent.

Appeal from District Court, Washakie County; Hon. P. W. Metz, Judge. Action by A. T. Allen against W. O. Lewis.

From an order granting plaintiff a new trial, defendant appeals.

*Charles H. Harkins* and *Lonabaugh & Wenzell,* for appellant.

On September 14th, twenty-eight days after the date of the filing of plaintiff's specifications of error, the judge assumed to pass upon the record and grant a new trial; the inquiry involves the question of the jurisdiction of the trial court to make such an order more than twenty days after the filing of the specifications in error; secondly, the propriety of granting a new trial; our statute on direct appeals apparently differs from similar statutes in other states in that it authorizes the trial court to grant a new trial before the case goes to the Supreme Court, and we assume no decision will be found in interpreting this provision of our statute; appellate procedure is statutory and may not be enlarged by construction. (2 Enc. P. & P. 16.) Nor jurisdiction conferred by consent. (Dailey v. Anderson, 7 Wyo. 1; Reardon v. Norton, 16 Wyo. 363; Burris v. R. R., 14 Wyo. 498; Cantlin v. Miller, 13 Wyo. 109; Boner v. Fall River, 168 Pac. 726.) The statute has fixed a period of fifteen days after the filing of specifications of error within which the trial court may review the record. If the judge may take longer than the time specified, the language of the act is set aside, and its whole purpose frustrated. The specifications of error are so general, that it is difficult to determine the ground upon which new trial was granted unless it be upon the principle of *res judicata.* Plaintiff seeks to enjoin defendant from building a ditch and flume across his land. Defendant claims a right of way, and plaintiff by reply pleads in bar the judgment in a formal trial. The question of an executed parol license and adverse enjoyment is claimed by plaintiff, and the following authorities are relied upon: Quinlan v. Noble, 75 Calif. 250, 17 Pac. 69; Long

Ir. 2nd Ed. Sec. 62; Tallman v. Casey, 15 Ore. 83, 13 Pac. 669; Coventon v. Seuvert, 23 Ore. 548, 32 Pac. 508. A parol license cannot be revoked after licensee has expended money or labor in making improvements. (Bowman v. Bowman, 57 Pac. 546, 15 R. C. L. 491; Gustin v. Harding, 20 Wyo. 1; Shaw v. Prophet, 109 Pac. 584; Flickenger v. Shaw, 25 Pac. 268; Ewing v. Rhea, 62 Pac. 790; Stoner v. Zuckner, 83 Pac. 808; McBroom v. Thompason, 37 Pac. 57; Maple Grove Co. v. Marshall (Utah), 75 Pac. 369; Long on Irr. 2nd Ed., Sec. 225.) The doctrine of *res judicata* has no application in this case under the facts. The true requirement is that the two suits shall be the same, between the same parties, and that points in issue in former suit cannot be retired. (23 Cyc. 1156; Cromwell v. Sac Co., 94 U. S. 351, 24 L. Ed. 1950. Black Judgments 504; Freeman Judgments 249.) Another test is whether the same evidence will sustain both the present and former action. (Freeman Judgments 259. Stone v. U. S., 64 Fed. 667.) The former action was for damages in cutting and carrying away alfalfa. There was no question of land or right of way involved. The result was not decisive of the present case. (Black Judgments 619-617; 23 Cyc. 1172, 1313, 1304; Freeman Judgments 271-272.) The record cannot be contradicted. (Freeman Judgments 275-625.) No estoppel can be shown as to. matters not within the pleadings. (Black Judgments 618.) Parol evidence may be introduced to show what was involved in the former case. (Black Judgments 625; Lillis v. Ditch Co., 27 Pac. 780.) But it must be shown that the judgment involved the determination of some facts. (Freeman Judgments 274.)

*H. W. Rich,* for respondent.

There was a stipulation by the parties that the cause might be reargued on September 12, 1917, and that the court might thereafter, upon consideration, enter its order overruling or sustaining the specifications of error. Reargument was had and on September 14th the court sustained specifications of error and granted a new trial. The question is whether the trial court may modify its order, so as to make the record

speak the truth. Counsel for appellant apparently seeks to evade the effect of their stipulation. The trial court may amend its record. (Borrego v. Territory, 46 Pac. 349.) And may make *nunc pro tunc* entries to supply omissions. (Wright v. Nicholson, 134 U. S. 137; Kelley v. U. S., 27 Fed. 616; Fay v. Stubenrauch, 75 Pac. 174.) A mistake may be corrected. (People v. Murback, 30 Pac. 608.) It is error to refuse to amend a record in such cases. (Pleyte v. Pleyte, 24 Pac. 579 (Colo.).) The doctrine of *res judicata* applies. The ownership of the land, adverse possession, and the location of the boundary line between the lands was placed in issue by the pleadings in the former case and necessarily passed upon in the determination thereof. (Graham v. Culver, 3 Wyo. 639; Black Judgments 505.) The case of Warwick v. Underwood, 75 Am. Dec. 767, is directly in point; also Johnson v. San Francisco Union, 7 A. S. R. 129, 75 Calif. 134; Furneaux v. Bank (Kan.), 7 A. S. R. 541.) It was competent to show by parol evidence what was involved in the former suit between these parties. (Herschbach v. Cohen, 99 A. S. R. 233, 169 N. E. 932, 21 A. & E. Enc. 244; Hawk & Co. v. Evans, 14 A. S. R. 248, 76 Iowa 593.) It was incumbent upon defendant in the former case to present every defense he had. (Lorillard v. Clyde, 122 N. Y. 41, 19 A. S. R. 470; Harmon v. Auditor, 123 Ill. 122, 5 A. S. R. 502; Gould v. Sternburg, 13 A. S. R. 138; Haley v. Ano, 136 N. Y. 569, 32 A. S. R. 764.) The question of title may be tried in a trespass action where put in issue by the pleadings. (Watson v. Richardson, 80 N. W. 416, 80 A. S. R. 331; Hunter v. Holt, 21 A. S. R. 73; Flippen v. Dickson, 83 Tex. 421, 29 A. S. R. 653; Dodd v. Scott, 25 A. S. R. 492; Freeman v. McAninch, 47 A. S. R. 79; Chicago Co. v. Barrett, 96 N. E. 795, 15 Stand. Ency. of Proc. 545.)

POTTER, JUSTICE.

This action was brought in the District Court of Washakie county by A. T. Allen as plaintiff against W. O. Lewis as defendant, and upon a trial to the court without a jury

judgment was rendered in favor of the defendant. Thereupon plaintiff filed and served notice of appeal, caused a record on the appeal to be prepared, and filed and served specifications of error, the latter appearing to have been filed with and as part of the record on August 17, 1917. Upon consideration of said specifications of error and a review of the record a new trial of the cause was granted by the district court on September 14, 1917, and thereupon the defendant filed and served notice of appeal, and the case is here upon that appeal from the order granting a new trial.

1.   The first point urged in appellant's brief as ground for reversal is that the district court was without jurisdiction to grant a new trial at the time the order therefor was made, for the reason that it was after the time limited by statute for the granting of a new trial by the district court upon a consideration of the specifications of error and a review of the record on appeal. The statute authorizing the transfer of a cause to this court for review by direct appeal, so-called (Laws 1917, Ch. 32), provides in section 10 that the clerk of the district court shall, within five days after the specifications of error are filed in his office, notify the judge of the district court before whom the action was tried, in writing, that the record on appeal in the cause is perfected and on file in his office, and that it shall thereupon became the duty of such judge, within fifteen days after receiving such notice, to review the record on appeal and consider the specifications of error, and if he shall determine that the party appealing is entitled to a new trial of the issue he shall make and enter an order granting it, whereupon the record shall remain with the clerk of the district court for trial in that court, unless the respondent shall appeal from the order granting a new trial, in which event the record on appeal as perfected shall constitute the record on appeal in the cause. It is further provided in the same section, that if the district judge shall neglect or refuse to grant the appellant a new trial within twenty days from the date of the filing of the specifications of error the clerk shall thereupon transmit to the clerk of the supreme court the record on appeal and

the specifications of error; and that in case the district
judge shall, "within the time limited by this act", grant
the party appealing a new trial and the other party shall
appeal from such order, the clerk shall attach to the record
on appeal, as prepared, said order and forthwith trans-
mit the whole of such record to the clerk of the supreme
court, and the party so appealing from the order granting
a new trial shall be designated appellant and the opposite
party respondent.

In preceding sections of the statute provision is made for
taking an appeal from a judgment or order of a district
court by filing and serving a notice to that effect within ten
days from the entry of the judgment or order appealed from
and. for preparing and filing with the clerk of the district
court a record on the appeal within a specified time which
may be extended by the court or judge for cause shown,
and for serving and filing with the clerk of the district court
specifications of error within a stated time after the record
is prepared and filed.

Complying with the provisions of section 10 aforesaid,
prescribing what shall constitute the record when an appeal
is taken from an order granting a new trial upon considera-
tion of the specifications filed by the party appealing from
the former judgment or order, the record prepared and filed
in the district court for plaintiff's appeal from the judgment
in the cause, including his specifications of error, with a
certified copy of the order granting a new trial, defendant's
notice of appeal from that order, and his specifications of
error attached thereto, was transmitted to and filed in this
court as the record on defendant's said appeal.   But the
plaintiff as respondent on this appeal has filed a suggestion
of a diminution of the record and an application for leave to
file as part thereof a certified copy of certain proceedings
alleged to have been omitted from the record, and that mat-
ter was presented and submitted at the time the case was
heard, and it was taken under advisement, together with the
cause upon its merits.   It appears from said application that
after the order granting the new trial was made and entered

the district court by another order, made upon the written application of the plaintiff, a copy of which had been served upon defendant's counsel, directed and declared the former order granting a new trial to be modified by adding thereto a recital of certain facts with reference to the time of the court's determination upon plaintiff's specifications of error, viz:

"That the specifications of error served and filed by the plaintiff in said action were taken up for consideration by this court within the time fixed by statute for the consideration of the same, to-wit, on the 3d day of September, 1917, and by oral stipulation entered into by H. W. Rich, Esq., attorney for the plaintiff, and Charles H. Harkins, Esq., one of the attorneys for the defendant, this court fixed the date for the hearing of said specifications of error on the 12th day of September, 1917, and beyond the time fixed by statute for the hearing and consideration of the same, and that the said specifications of error were heard and considered by this court after the time fixed by statute for the hearing and consideration of the same, by the consent of Charles H. Harkins, one of the attorneys for the defendant, and that the same was so heard and considered, as aforesaid, by the oral stipulation made between said attorneys in open court, and after the time fixed by the statute for the consideration of same."

It is stated in the order adding the above recital of facts to the previous order for a new trial that the truth of such facts was established by the evidence at the hearing of plaintiff's application for a modification of the former order and also that they were true of the court's own knowledge. The addition to the order of a recital of the facts aforesaid was not strictly a modification thereof, but an amendment, and was clearly intended to make the order show the facts of the consideration of the specifications of error and that the delay was by consent and application of the parties. The fact that within the time provided by the statute for considering the specifications of error the parties appeared and consented to a consideration thereof at a later time, or stipulated therefor, might have been shown by a separate journal

entry as of the date when the parties so consented or stipu-
lated and that the time for such consideration was fixed in
compliance therewith, and those facts might properly have
been recited in the order granting a new trial, to show the
court's authority or jurisdiction, or a waiver of the parties as
to time.   And we think it was proper to amend the order so
that such facts might appear therein, either at or after the
term.   (Sch. Dist. v. Western Tube Co., 13 Wyo. 304; 80
Pac. 155; Oak Hall Clothing Co. v. Bagley, 147 N. C. 37,
60 S. E. 648.)   The fact that this appeal had been taken
and the record filed in this court did not deprive the court of
the right to amend the order by adding the facts aforesaid
so as to make it speak the truth as of the time it was made
and entered.   (2 Cyc., 976; 15 C. J. 977; Guernsey v.
Miller, 80 N. Y. 181; Bull v. Int. Power Co., 84 N. J. Eq.
209; 93 Atl. 86; Kvamme v. Barthell, 144 Ia. 418, 118
N. W. 766, 31 L. R. A. (N. S.) 207, and note.)

When the record was filed in this court the amendment
aforesaid had not been made, and the clerk properly trans-
mitted with the record previously prepared a certified copy
of the order granting a new trial as originally made and
entered.   But whatever the effect of the later order amend-
ing the one found in the record, it is clearly proper that it
should be brought into the record here upon the application
of a party, and, since it is not required that the proceedings
subsequent to the filing of the perfected record and specifica-
tions of error under the appeal disposed of by granting a
new trial shall be authenticated by the certificates of the
judge and clerk, as in the case of the original record, it is not
necessary to return the record for correction, but, as pro-
vided by our rules (Rule 12) the omitted part may be made
a part thereof by requiring the clerk to certify thereto or by
granting leave to file a duly certified copy produced by a
party applying therefor.   The application of the respondent
will, therefore, be granted, and the certified copy of the
order aforesaid amending the order granting a new trial and
of the application upon which it was made, the same having

been produced at the time of the hearing, will be ordered filed as part of the record on this appeal.

2. The question, therefore, of the trial court's jurisdiction to grant a new trial when its order therefor was made and entered is to be determined upon the facts now shown by the record, viz: That said order was made after the expiration of twenty days from the filing of plaintiff's specifications of error, but at a time which, within said twenty day period, had been agreed upon and fixed by stipulation of the parties in open court for the hearing and consideration of such specifications of error.

In discussing this question of jurisdiction counsel for appellant in their brief call attention to and cite authority in support of the principle that all requirements of the statute for taking and perfecting an appeal must be complied with, that they are jurisdictional, and that such jurisdiction cannot be conferred by consent. The point here, however, is not the jurisdiction of an appeal or that of an appellate court, but the authority or jurisdiction of the trial court to grant a new trial. It is expressly provided by section 11 of the statute aforesaid that this court shall not acquire jurisdiction over a cause appealed under its provisions until the record on appeal is filed with the clerk of this court. And it does not appear that any record for an appeal in the cause was filed in this court until November 12, 1917, following the filing in the district court, on September 24, 1917, of defendant's notice of appeal from the order granting a new trial, and the filing of his specifications of error on November 8, 1917. Hence this court had not acquired jurisdiction of the cause when the order of September 14, 1917, was made and entered granting a new trial, but all the jurisdiction that remained or existed in any court at that time was in the district court.

It is contended, however, that the provisions of section 10 requiring the district judge, within fifteen days after receiving the clerk's notice of the filing of the specifications of error on an appeal, to consider them and review the record, and to grant a new trial if he shall determine that the ap-

pellant is entitled thereto, and that if such judge shall neglect or refuse within twenty days after such specifications are filed to grant a new trial the clerk shall thereupon transmit the record and specifications to the clerk of the supreme court are mandatory in effect as to the time for exercising the authority thereby given to grant a new trial, and that such authority ceases upon a neglect or refusal to grant a new trial within the said twenty day period.

These provisions do not merely confer or declare an authority to grant a new trial, they impose upon the district judge the duty to review the record and consider the specifications of error, and if he shall determine that the appellant is entitled to a new trial then to grant the same. And they indicate, together with the other provisions, that the purpose of the statute was not only to furnish a shorter and perhaps more easy method of appeal than by a proceeding in error, but also to expedite the final disposition of a cause. The statute did not repeal the provisions for the review of a cause upon a proceeding in error. On the contrary, it expressly declares, in section 15, that the direct appeal is provided for as a separate and independent method of reviewing civil and criminal causes in addition to the statutory provisions for reviewing such causes in the Supreme Court on proceedings in error. To obtain a review on proceedings in error, a bill of exceptions is often necessary, which requires time for its preparation, presentation and allowance. The statute providing for a so-called direct appeal dispenses with the necessity of a bill of exceptions by authorizing a transcript of the testimony certified to by the official court reporter as true and correct to be incorporated in the record, and also all original motions, demurrers, and instructions given and refused, together with the pleadings, verdict or findings, orders, and judgment. To have a matter considered in this court on a proceeding in error which could have been properly assigned as a ground for new trial in the court below, it must appear by bill of exceptions that the same was properly so presented, that the motion was overruled, and an exception reserved thereto. The direct appeal statute

does not provide for making such a motion, but substitutes therefor specifications of error and the provisions aforesaid for a consideration thereof by the district court, without, however, requiring the record of any decision thereon unless a new trial be granted. That is to say, if a new trial is not granted so as to retain the cause in the district court the specifications of error will come directly before this court for consideration upon the submission of the cause here upon the record.

We know from the unwritten history of the statute in question that section 10 was not originally in the bill as prepared to be introduced at the 1917 session of the legislature, and that it was inserted upon a suggestion to the committee of the State Bar Association in charge of the matter that since the cause might not come before the district court on motion for new trial, that court should be afforded an opportunity to examine the specifications of error and grant a new trial if the appellant should be entitled thereto. It was thought that such procedure would not only afford the trial court an opportunity to discover and correct its own error, if any had been committed, but might also in some cases prevent a delay in the final disposition of the cause. And the obvious reason for fixing a time for such consideration by the trial court was to prevent the provision therefor itself causing unnecessary or unreasonable delay. And to further promote the purpose aforesaid, while providing for a review of the record by the trial court upon the specifications of error it is also provided that an appeal may be taken from an order granting a new trial, and upon the same record as to the proceedings prior to such order. But if the limitation as to the time specified for such review by the district court or judge should be held mandatory to the extent of excluding or debarring the right to waive it, the purpose of the statute to hasten final disposition might be defeated in some cases, while a construction allowing the time limitation to be waived cannot materially interfere with such purpose, since the respondent on an appeal from the judgment may appeal directly from an order granting a new trial.

An affirmative statutory provision relating to the time or manner of performing official acts unlimited or unqualified by negative words is generally considered as directory rather than mandatory, though it is a question of intention, to be ascertained from a consideration of the entire act, its nature and object and the consequences that might result from construing it one way or the other. (Lewis' Sutherland on Stat. Const., 2nd Ed., Sec. 610; 36 Cyc., 1157.) And with reference to courts of record or general jurisdiction, a statute limiting the time for a decision or judgment has frequently been held to be directory only. (Gomer v. Chaffe, 5 Colo. 383; Vermule v. Shaw, 4 Cal. 214; Board v. Murray, 44 Cal. 228; McQuillan v. Donahue, 49 Cal. 157; Rawson v. Parsons, 6 Mich. 401; James v. West, 67 O. St. 28, 65 N. E. 156.) So a requirement that opinions shall in all cases be filed before judgment pronounced was held directory. (Fraser v. Willey, 2 Fla. 116.) The Ohio case cited holds a statute requiring that any cause submitted on motion or demurrer shall be determined within thirty days after such submission to be directory merely, and that it did not deprive the court of jurisdiction. The court said that the object was to secure speedy action, and that to take away jurisdiction would cause intolerable delay. And in the Michigan case cited a statute was held directory which required a circuit judge trying a cause to give his decision on or before the first day of the succeeding term. In the Colorado case a statute requiring a motion for new trial to be filed and a decision thereon made at the same term the findings are made or verdict returned was held to be directory so far as it required the action of the court to be performed within a specified time.

There are no negative words in the statute under consideration, unless the provision for transmitting the record to this court upon the neglect or refusal of the district court to grant a new trial within the twenty day period is to be given that effect. But it is unnecessary to construe the provision under consideration as merely directory to sustain its jurisdiction to grant a new trial under the circumstances of

this case after the expiration of the twenty day period, and we do not determine the effect of the limitation generally. If it is subject to waiver it was clearly waived in this case, for the postponement was by stipulation of the parties in open court. And we think it may be waived, and that when the time is extended by consent amounting to a waiver the record may properly be retained in the district court until the expiration of the time as so extended, so that if a new trial is granted within that time the record will then be retained for further proceedings as provided in the statute. And an appeal may be taken from the order granting a new trial as provided in the section, the same as if the order had been made within the twenty day period, though the time therefor will be determined by the date of the entry of such order. This, in our opinion, is in accord with the purpose of the provision and not inconsistent with its language as relating to a court of general jurisdiction possessing inherent power to grant a new trial, except as limited or regulated by statute. (See 1 Black on Judg., Sec. 297; 20 R. C. L. 218, 219; 14 Ency. Pl. & Pr. 932; DeVall v. DeVall, 60 Or. 493, 118 Pac. 843, 120 Pac. 13, 40 L. R. A. (N. S.) 291 and note, Ann. Cas. 1914A, 409 and note; Furman v. Furman, 153 N. Y. 309, 47 N. E. 577, 60 Am. St. Rep. 629; Hensley v. Davidson Bros. Co., 135 Ia. 106, 112 N. W. 227, 14 Ann. Cas. 62 and note p. 65; Niles v. Parks, 49 O. St. 370, 34 N. E. 735; Brenzinger v. Am. Exch. Bank, 19 O. C. C. 536; Volland v. Wilcox, 17 Neb. 46, 22 N. W. 71.) And that a limitation upon the time for granting a new trial may be waived is sustained by abundant authority. (Second Nat'l Bank v. Smith, 118 Wis. 18, 94 N. W. 664; Ward v. Smith, 166 Wis. 342, 165 N. W. 299; Gribble v. Livermore, 64 Minn. 396, 67 N. W. 213; Myers v. Stafford, 114 N. C. 231, 19 S. E. 232; Shipp v. Shelton, 193 Ala. 658, 69 So. 102; Smidt v. Third Dist. Court, 23 Utah 302, 64 Pac. 869; Houston Saengerbund v. Dunn, 41 Tex. Civ. App. 376, 92 S. W. 429; Keholy v. St. Ry. Co., 103 Ga. 363, 29 S. E. 712; and see Mayer v. Friedman, 44 N. Y. App. Div. 518, holding that the statutory time for a decision

by a justice of the municipal court of city of New York may be extended by written stipulation, and Skaar v. Eppeland, 35 N. D. 116, 159 N. W. 707, deciding that where a motion for a new trial is duly noticed to be heard within the six months period allowed for appeal, and final hearing is postponed by consent of the parties or delay of the court in deciding the motion, the final character of the judgment is suspended so as to keep the action pending and subject to decision on the motion, under a statute providing that an action is deemed to be pending until final determination on appeal or until the time for appeal has passed.)

The Wisconsin statute declares that a motion for new trial upon the judge's minutes "can only be heard at the same term at which the trial was had", and that: "If such motion be made, but not decided during such term, it shall be taken as overruled." In the case of Bank v. Smith, supra, the court said:

"We are unable to agree with the contention that this provision is mandatory or jurisdictional in the sense that the parties may not waive its requirements. Its object evidently is to protect the parties to the action, not the public, to expedite business, and to insure an appellant against difficulties or embarrassments likely to result from inaction or neglect by the trial court. Were public policy or interests involved, the question would be quite different, but, where such a provision is imposed simply for the benefit of the parties, the principle is well settled that its benefits may be waived by those parties, if they choose."

3. Appellant further contends that the order granting a new trial is erroneous upon the pleadings and evidence in the case. The action was brought by the plaintiff Allen for an injunction to restrain the defendant Lewis from constructing a flume and ditch upon certain land of the plaintiff and for damages for trespassing upon the land in preparing for and commencing the construction of the flume. The action was commenced on April 28, 1917, and a temporary restraining order was issued on that date.

The petition alleges plaintiff's ownership and possession of the land; that on or about April 27, 1917, the defendant entered thereon and wrongfully, unlawfully and maliciously carried thereon timber and lumber and commenced the erection of a flume on the land, threatening to continue the work and to dig a ditch across the land; and that plaintiff was damaged thereby in the sum of five hundred dollars. The answer contains four defenses separately stated and numbered. The first is a general denial of the allegations of the petition. The second alleges that defendant is the owner and in possession of a certain described tract of land; that on or about the year 1906, before the plaintiff had acquired the land claimed by him, and more than ten years before the commencement of the action, the defendant constructed the ditch and flume referred to in the petition with the knowledge, acquiescence and consent of the then owner of plaintiff's said land, and ever since continuously used the same for the irrigation of the land owned by him, until said ditch and flume were wrongfully destroyed by plaintiff in April, 1917. That the plaintiff purchased his land in April, 1915, with knowledge of the defendant's ownership of the ditch and flume, and charged with notice and knowledge of defendant's right of way for the same across said land, estopping the plaintiff from claiming any right against defendant's use and possession of the ditch and flume. The third defense alleges that for more than ten years preceding the commencement of the action the defendant was in open, notorious and exclusive possession of the ditch and flume and the right of way therefor.

The fourth defense is also pleaded as a cross-petition. It alleges: That more than ten years before the commencement of the action the defendant was and had continued to be the legal owner of a certain described tract of land,—the same as described in the second defense. That immediately after acquiring the land he enclosed it with a substantial wire fence, constructing it between his land and that of the plaintiff more than ten years before the commencement of the action upon a line agreed upon by de-

fendant and the then owner of plaintiff's land as the division line between the two tracts, and that said fence was maintained by defendant until shortly before the commencement of this action. That on or about 1906, with the consent of the then owner of plaintiff's land and at an expense of about $700, and with the consent, knowledge and acquiescence of the then owner of the land described in the petition, defendant's said ditch and flume were constructed within the lines of his said enclosure, and thereafter continuously used for the irrigation of his land until shortly before this action was commenced. That plaintiff acquired his land in April, 1915, having then notice and knowledge of said fence, ditch and flume. That shortly prior to April 28, 1917, the plaintiff wrongfully and unlawfully tore down and destroyed the fence, ditch and flume, and removed the fence about sixty feet upon the premises of defendant, thereby placing the ditch and flume outside defendant's enclosure. That defendant has valuable crops of hay and grain growing upon his land, and has no other means of irrigating the same. After alleging other facts relating to the damage caused by the destruction of the ditch and flume, and perhaps the removal of the fence also, judgment is asked by the cross-petition for the amount of the damages alleged, that the temporary restraining order be dissolved and the plaintiff enjoined from entering upon the right of way for the ditch and flume, and from interfering with defendant's right thereto or his use and possession thereof; also that the line upon which the division fence was originally constructed be decreed to be the true division line between the lands of plaintiff and defendant, and that plaintiff be required to tear down and remove the fence wrongfully constructed by him on the land of defendant and reconstruct it upon the line where it was originally constructed.

Plaintiff by reply filed denies each and every allegation of the defenses set up in the answer, and for further reply alleges that each and all of the defenses and the cross-petition are barred by a former adjudication in an action in said district court instituted on September 30, 1916, by said

Allen, the plaintiff herein, against said Lewis, the defendant herein, and decided by judgment rendered on February 7, 1917, in favor of the plaintiff, the reply setting out the pleadings and judgment in said action, and alleging that the judgment was rendered upon evidence introduced by the plaintiff and defendant respectively.

The evidence shows that plaintiff and defendant owned adjoining tracts of land, the plaintiff's land lying east and the defendant's land west of the dividing line. That defendant acquired his land by homestead entry in 1906, making final proof and receiving patent in 1912. That in 1906 he constructed a fence upon what he then believed to be the east boundary line of his land, but in fact the fence was built upon plaintiff's land about sixty feet east of the boundary line between the two tracts, thereby bringing within defendant's enclosure that part of plaintiff's land lying west of the fence and north of a river which, running in a northwesterly direction, crosses the land near the southwest corner thereof. That in the same year the defendant built a flume across the river and for some distance north of it about 300 feet, and a ditch connecting therewith, the flume and ditch north of the river being constructed close to and along the west side of said fence, and within defendant's enclosure at that time, though not upon his land, but upon said adjoining tract; the flume and ditch having been constructed for the purpose of conducting water upon defendant's land for the irrigation thereof, and so used until the destruction of that part of the flume north of the river in April, 1917, by the plaintiff, who had acquired title to his land in 1915. It also appears that prior to the said destruction of the flume the plaintiff had built a fence upon the true boundary line between his land and that of the defendant, and the evidence seems to permit the inference that it may have taken the place as a division fence of the one formerly built by the defendant, and that the latter may have been removed, though the fact whether or not it had been removed is not definitely shown. After the destruction of the flume the defendant went upon the land of plaintiff to reconstruct it, and his acts

in that connection resulted in the bringing of this action. The defendant did not introduce or offer any evidence to establish the averments of his cross-petition relating to his fence. The facts aforesaid concerning that fence were brought out on plaintiff's cross-examination of the defendant and by the testimony of the plaintiff on rebuttal, the latter also referring to the fact that another fence had been constructed by the plaintiff on the proper boundary line.

To maintain his alleged right to the continued use and possession of the ditch and flume where it had been located and built the defendant testified that before building the same he went to see Mr. Douglas, then the owner of the land now belonging to plaintiff, and told him that he wanted to construct a ditch across "this land" and would have to cross him and asked him "if he had any objections to his building the ditch across his land", and that he said: "No, build the ditch where it is convenient." That based on that consent he went ahead and built the ditch, expending for that purpose about $700. That there was about 300 feet of flume and from that a dike clear across the land. He further testified that during all the time he had used the ditch and flume, neither Mr. Douglas, who died about 1908 or 1909, nor any subsequent owner of the land made any objection to said use by him, until the spring of 1917, when the plaintiff tore down the flume and "threw it over the fence on to my own land." That relying on such consent he also cleared, plowed and seeded about 35 acres of his land.

On cross-examination he was asked several questions concerning his testimony in the former action mentioned in the reply. The form of some of the questions seems to indicate that their object, in part, at least, was to show by what the defendant had testified to in the former action that the title to the ground upon which the part of the ditch and flume here in controversy was located was in dispute and an issue in that action. The testimony is also and we think more important upon another point in the case. The other action, as shown by the pleadings introduced in evidence on the trial of this case, was brought by the plaintiff Allen on Septem-

ber 30, 1916, against the defendant Lewis, to recover damages for an alleged trespass upon plaintiff's land by wrongfully entering thereon on or about September 6, 1916, and cutting and removing hay and alfalfa seed growing thereon. The answer was a general denial. The allegations of the petition as to the trespass complained of were not confined to the strip of ground lying west of the boundary or division fence built by the defendant and crossed by the ditch and flume, and at one time within the defendant's enclosure, but, after describing certain land, including the tract adjoining defendant's land, and alleging that it was owned by plaintiff and in his possession, it alleged a wrongful entry thereon by defendant and the cutting and removal of the hay and alfalfa seed growing thereon and belonging to the plaintiff. The evidence in this case, however, tends to show that the alleged wrongful acts complained of in the former action occurred upon that part of plaintiff's land involved in this action, viz: The part immediately adjoining defendant's land on the east and lying west of the fence that had been built by defendant, and upon or across which he had constructed his ditch and flume; and it may be conceded that the evidence is sufficient to show that fact, if material and competent. The judgment in said former action recites that the cause was tried to the court, that witnesses on the part of plaintiff and defendant were sworn and examined, that the court found in favor of the plaintiff and that he was entitled to damages in the sum of $50.00, and it was ordered that the plaintiff recover that amount and costs.

Having thus stated the issues in the former action, as shown by the pleadings therein, and that there is evidence here showing upon what part of plaintiff's land the trespass occurred, we revert to the testimony of the defendant in this case upon cross-examination. We quote from the record that part of it deemed most important to be considered in determining the questions presented by this appeal from the order granting a new trial:

Q. "Your flume is located on Allen's land? A. Yes, sir. Q. Your ditch is on Allen's land, is it not? A. Yes,

sir. * * * Was the ditch and flume within the inclosure that you claimed? A. Not all of it. * * * Q. Was the flume within the enclosure? A. At one time it was. Q. Was the ditch on the north side of the river within the inclosure? A. Yes, sir. Q. Where was the fence that inclosed this ditch? A. The fence was on the east side of the ditch along the bank. Q. That was also true of the flume, was it not? A. Yes, sir. * * * Now, Mr. Lewis, is this the same identical fence that you testified to being on the boundary line between you and Mr. Allen in the former action wherein you were defendant and Mr. Allen was plaintiff, being case No. 118? A. The fence wasn't on the boundary line. This is the same fence. Q. It wasn't on the boundary line? A. No, sir. Q. Did you testify in that action, No. 118, the case referred to, that you built that fence on the boundary line as you thought it? A. I built the fence. * * * Q. Did you testify in that action, being case No. 118, that you thought that you were building this fence on the line at the time you built it? A. Yes, sir. Q. Then, at the time you built the ditch you, of course, thought that you were building it on your own land? A. Which ditch do you mean? Q. The ditch north of the river? A. Yes, sir. Q. And you thought when you built the flume, it being west of the fence, that you thought that it was on your own land, did you not? A. Yes, sir. * * * Q. Now, Mr. Lewis, you thought that that flume and ditch was on your own land and thought that fence you built was the boundary line up until the time of this prior action, case No. 118, up to the trial of that case, did you not? A. What flume and ditch? The Court: Answer the question. You know what flume and ditch he is talking about. A. On the north side of the river, yes, sir. * * * Q. Now, Mr. Lewis, you are claiming in this suit the right to the possession of this land for the purpose of a flume and ditch because you have used it for a number of years without objection, are you not; in other words, you are claiming it because of your adverse possession? A. Yes, sir."

The court sustained objections to questions inquiring if defendant's claim of adverse possession was presented by the evidence in the former suit and if the witness testified therein relating to such possession. The court also sustained an objection to a question asking if the witness did not testify in the former action that the only agreement or conversation he had with Mr. Douglas related to the building of the fence.

The plaintiff Allen and another witness were called on rebuttal, apparently for the purpose of showing that defendant's right to the possession of the land upon which the ditch and flume were located was an issue and adjudicated in the former action. And the plaintiff testified that on the trial of that action the defendant claimed all the land west of his fence for the reason that he had held it a number of years by adverse possession. He testified further to the following: That when the defendant as a witness on the trial of the former action was asked by his counsel if Mr. Douglas had given him permission to build the fence, he stated that "Mr. Douglas was satisfied with it, let him put it there", and that on cross-examination, when asked what his agreement with Mr. Douglas was, he stated that Mr. Douglas had seen him put the fence there and didn't say anything about it; and that when asked if that was all the conversation he had with Douglas about the possession of the land, the defendant answered that that was all the conversation they had, and that the defendant said when so testifying in the former action that he thought he was building the fence on the boundary line. The other witness testified substantially to the same facts, and stated that the question of the boundary line was brought up in that action, and the defendant claimed the land up to the fence he had built.

The court's conclusions of fact and of law were stated separately. The findings of fact included the following: That in 1906 Edward Douglas, who then owned the land upon which defendant's ditch and flume was constructed, gave the defendant his oral permission and consent to the construction thereof across his said land, whereupon the

defendant, relying upon said consent and license, constructed said ditch and flume at an expense of $500 to $700, and thereafter continued to use the same for the irrigation of his land during each irrigating season until the spring of 1917, a period of more than ten years. That defendant's use and occupation of the ditch and flume and the right of way therefor was open, notorious, continuous and adverse during all of said period since the year 1906, as against said Douglas and his successors in interest. That in April, 1917, the plaintiff wrongfully destroyed the flume. That in a former action the plaintiff recovered judgment against defendant for $50 and costs for certain alfalfa and alfalfa seed wrongfully taken and appropriated by defendant from said land, in the action set forth in plaintiff's reply. That defendant was damaged in the sum of $50 by plaintiff's wrongful act in destroying the flume. That the court finds generally for the defendant on the issues joined herein, "except as to all matters pleaded by said defendant with reference to a so called line fence and adverse possession on account threof; on which issue defendant offered no evidence, and the court finds said issue against said defendant."

It was found as conclusions of law: 1. That by defendant's entry on the land of Douglas and the expenditure of money in constructing the ditch and flume the parol license became and was fully executed and thereafter irrevocable, so long as the use of the ditch and flume is necessary for irrigating defendant's land. 2. That by defendant's open, continuous, notorious and adverse use of the ditch and flume he has obtained title to the right of way therefor by adverse user. 3. That he is entitled to the exclusive use and occupation of the land necessary for the ditch and flume, during each irrigating season, and the right to enter upon the land of plaintiff for the purpose of rebuilding the flume and repairing and maintaining it and the ditch. 4. That the proceedings and judgment in the former action between the parties was not *res judicata* of the issues in this action. 5. That the temporary injunction was wrongly issued and ought to be dissolved. 6. That plaintiff as successor in

interest to the title of said Douglas accepted the same charged with a right of way for defendant's ditch and flume. 7. That defendant is entitled to a decree in accordance with the findings of fact and law and to an injunction restraining the plaintiff from interfering with said ditch and flume. Thereupon the temporary injunction was ordered dissolved, defendant's title to the right of way quieted and confirmed, and plaintiff was enjoined and restrained from interfering therewith, and defendant was given judgment for $50, his said damages, and costs.

The specifications of error on plaintiff's appeal from the judgment challenged the findings and judgment as contrary to law and not sustained by sufficient evidence, and specifically each conclusion of law and most of the rulings on the admission and exclusion of evidence as error. The order granting a new trial from which the present appeal is taken assigns no specific reasons therefor; it recites merely that having considered the specifications of error and read the record and briefs and heard the arguments of counsel the court finds that the plaintiff is entitled to a new trial, and thereupon directs that the cause be tried *de novo*. But counsel have assumed that the ground upon which a new trial was ordered was or may have been that the court had erred either in the exclusion of evidence offered by the plaintiff upon the issue of *res judicata* or in the conclusion of law that the judgment in the former action was not *res judicata* of the issues in this case. Appellant's counsel, supposing that to have been the ground upon which the court acted, while disclaiming any knowledge concerning it, have confined their argument to a discussion of the issue of former adjudication raised by the reply, aside from a statement of the principles relied on to sustain defendant's alleged right to maintain the ditch and flume where it was constructed under a parol license; and they contend that the doctrine of *res judicata* is inapplicable to the facts in this case. Counsel for plaintiff and appellee, on the other hand, states that the new trial was granted upon the issue of *res judicata,* and contends that the plaintiff was entitled

to a new trial because of error upon that issue. But whatever the information or supposition of counsel as to the ground inducing the district court to grant a new trial, since the record discloses nothing in that respect except that upon a consideration of the specifications of error and the arguments of counsel and a review of the record the court found that the plaintiff was entitled to a new trial, no ground can properly be excluded from our consideration that might be found sufficient to justify the order, if, indeed, the exclusion of any such ground would be proper under other circumstances.

It may be assumed or conceded for the purpose of this decision that in the previous action the defendant claimed and sought to establish by his evidence a right to the possession of the land west of the fence built by him and to the crop growing thereon, as the result of adverse possession on his part or the building of the fence with the consent or acquiescence of the then owner of the land, or both. But it does not appear that the ditch or flume were referred to in any way in the evidence produced upon the trial of the former action, or that the right of way therefor was in any manner involved in that action independently of the title to the land crossed by the ditch and flume or the right to its possession as determining the respective rights of the parties to the alfalfa growing thereon, and whether in cutting and removing the same the defendant had committed a trespass. Nor do we think it can be held, in view of the character and object of the former action, that defendant's alleged right of way for the ditch and flume, or his alleged right to maintain them across plaintiff's land, might or ought to have been pleaded in said action. That action was one merely for damages for an alleged trespass committed by cutting and removing the crop of hay or alfalfa growing upon the land, and it does not appear that any of such crop was growing in or upon or was cut from the ditch or any of the limited strip of ground essential to the right of way therefor. But if some part of the crop had been cut from the ditch or the banks thereof or any part necessary to the right of way, the

fact that defendant had acquired a right of way for the ditch, either by adverse possession, agreement, conveyance, or in any other manner, would not necessarily give him a right to the produce of any part of the land, and would not require the defendant to plead as a defense to said action his alleged right of way for the purpose of protecting his claim thereto, since it could not have affected the decision in the case.

If the former action had been one to quiet the plaintiff's title to the land or to recover possession thereof a different question might be presented here. But so far as the title or possessory right to the land may have been involved in the former action it was evidentiary only, for the sole purpose of establishing the respective rights of the parties to the growing crops. But we do not think that the assertion of title by the defendant to the land in that action, through adverse possession or otherwise for the purpose aforesaid, would preclude him from alleging and claiming in this action a right of way for his ditch and flume not dependent upon his owning the land. For one may acquire a right of way for a ditch without having any other interest in the land. And without any title to the land or the right to its possession otherwise, the defendant might have acquired a right of way across it for his ditch and flume.

What we have said upon the issue of *res judicata* is not intended to apply to the fourth defense and cross-petition in the defendant's answer, so far as it relates to the fence built by defendant and its removal by the plaintiff, or the relief sought upon the averments as to that fence and defendant's possession of the land thereby, adverse or otherwise, or any averment other than those relating specifically to the ditch and flume. Defendant having offered no evidence in support of that defense and cross-petition except to show the building of the ditch and flume, its purpose and continued use, the circumstances under which it was located and constructed, its destruction by plaintiff and the damage caused thereby, and the court having found against the defendant upon all matters pleaded by defendant with refer-

ence to the fence and adverse possession on account thereof, the effect of the judgment in the former action as a conclusive adjudication as to the title or right to possession of the land beyond the right to maintain and use the ditch and flume is not before us and has not been considered.

Upon the issues that are here our opinion is opposed to the contention of the respondent respecting the effect of the proceedings in the former action upon the claim of the defendant to a right of way for his ditch and flume. But the order granting a new trial must be affirmed upon other grounds. To justify a reversal, at least in the absence of a showing by the record of the specific reasons upon which the trial court acted, we should be able to say that there was nothing in the specifications of error which, upon their consideration and a review of the record, would entitle the plaintiff to a new trial. And we cannot say that. One of the grounds alleged in the specifications of error for a reversal of the judgment was that the evidence was insufficient to sustain the findings and judgment. When passing upon such a ground in considering the question of a new trial, the trial court is allowed a large discretion. (29 Cyc., 1008.) And we think that a new trial might properly have been granted on that ground alone.

The defendant testified, as stated above, that the owner of the land at the time the ditch and flume were constructed told him to build it where convenient, when he was asked if he had any objections to the construction of the ditch across his land. Upon that consent, and the subsequent acquiescence of such owner and his successors in the title, until the plaintiff destroyed the flume, and the expenditure of a substantial sum of money and the continuous use of the ditch and flume, the defendant bases his claim of a right of way; in other words, upon a parol license, alleged to have become irrevocable as the result of the subsequent conditions. But on cross-examination the defendant admitted that in the same year that he built the ditch, though whether before or after the ditch was constructed does not appear, he built a fence east of the ditch on what he supposed to be

the division or boundary line between his land and the adjoining tract, thereby bringing the ditch and the connecting flume within his enclosure, and that it so remained until after the plaintiff acquired title to such adjoining tract, a period of at least nine years. And further, that he thought he was building the fence and the ditch and flume on his own land and that the ditch and flume were on his own land, until the trial of the former action. That trial is shown to have occurred by the recital of the judgment in the action in February, 1917.

If he located the ditch on the line originally intended when asking permission of the adjoining land owner to cross his land, the inquiry seems a natural one: Why did he ask such permission when intending to build it upon his own premises? If the consenting owner of the adjoining tract also thought that the line of the fence was the true boundary line, and that the ditch was on defendant's land, he might well have consented to its construction there without giving or intending to give a license to locate the ditch across his land. It is said that a license cannot be predicated on a mistake. (17 R. C. L. 573.) In the case cited in support of that statement, Schraeder Min. Co. v. Packer, 129 U. S. 688, it appeared that the plaintiff in error claimed that the consent of the defendant in error, Packer, to the running of a painted line to mark the boundaries between their timber lands amounted to a leave and license to the plaintiff in error to cut the timber up to that line; and upon that claim the trial court charged the jury "that the adoption of a boundary line by mistake had no element of license in it, and does not necessarily indicate intention on the part of either Packer to give, or of the Schraeder Company to receive, a license to cut and appropriate timber on Packer's lands."

The court said that they could not discover any error in that part of the charge. And, referring to certain Pennsylvania decisions cited by plaintiff in error, the court said further that in most of those cases the boundary line was agreed upon to settle a dispute, and in the others the party setting up the estoppel had been misled as to a material

fact by the false or mistaken representation of the party making a claim inconsistent with such representation. And the case of Perkins v. Gay, 3 S. & R. 327, 331, is referred to and the remarks of Mr. Justice Gibson therein quoted as follows: "If the parties, from misapprehension, adjust their fences and exercise acts of ownership in conformity with a line which turns out not to be the true boundary, or permission be ignorantly given to place a fence on the land of the party, this will not amount to an agreement or be binding as an assent of the parties." The court said further:

"The decisions in the other states generally support the rule that owners of adjacent tracts of land are not bound by consent to a boundary which has been defined under a mistaken apprehension that it is the true line, each claiming only the true line, wherever it may be found, and that in such case neither party is precluded or estopped from claiming his own rights under the true one, when it is discovered. Nor can such consent in an action of trespass *quare clausum fregit,* upon the theory of leave and license given, operate as an estoppel upon the claim of the plaintiff to recover damages to the extent of the value of the timber taken, any more than it can under the plea *liberum tenementum* divest his title to land on which the alleged cutting and removal were committed."

It is, of course, possible that the adjoining landowner may not have acted under the same mistake as the defendant respecting the true boundary, but in the absence of direct evidence as to the understanding or belief upon which he acted, we think it would not be improper for the trial court to refuse to find that he gave his alleged consent with full knowledge of the location of the true boundary line, especially in view of the fact that defendant's fence was allowed to stand as marking the boundary line undisturbed and without objection until after the plaintiff acquired his title. The defendant having admitted that when constructing the ditch and flume and until February, 1917, he thought they were on his own land, it is difficult to understand upon what principle his expenditure of money in such construction

and his continued use of the ditch can operate to give to the alleged consent of the adjoining landowner the character of an executed and irrevocable license.

A new trial might properly have been granted also upon the insufficiency of the evidence to sustain the finding of fact that defendant's use of the ditch and flume and the right of way was adverse during all of the period following its construction, and that said finding is contrary to law, in view of the fact that such use by him was not hostile to the owner of the land, since he claimed to have located the ditch and flume by the land owner's consent and permission and relied upon a license based thereon. (1 Cyc., 1030; Bryant v. Cadle, 18 Wyo. 64, 104 Pac. 23, 106 Pac. 687.) And that his claim of adverse possession was based entirely upon a possession under his mistaken belief that his own adjoining land extended to the division fence built by him. (Fieldhouse v. Leisburg, 15 Wyo. 207, 88 Pac. 214.)

The third and fourth findings of fact are inconsistent and also the first and second conclusions of law. By the third finding of fact the court finds that the defendant obtained from Edward Douglas his oral permission and consent to the construction of said ditch across the land of said Douglas, and thereupon, relying upon said consent and license the defendant entered upon the land of Douglas, and constructed the ditch and flume thereon. By the fourth it is stated that defendant's use of the ditch and flume was adverse as against said Douglas and his successors in interest. By the first conclusion of law the court found that by defendant's entry on the land of Douglas, and the expenditure of money in constructing the ditch and flume, the parol license became and was fully executed and thereafter irrevocable; and by the second conclusion of law, that the defendant by adverse use of the ditch and flume over the said land for a period of more than ten years had obtained title to the right of way. "A possession by permission or license from the owner is not adverse and cannot ripen into title, no matter how long continued or however exclusive it may be. The possession of the occupant under such circumstances is considered as

the possession of him upon whose pleasure it continues."
(1 Cyc., 1030; 2 C. J. 131.) While, as held in a number of
cases, a possession permissive in its inception may never-
theless become adverse, there is nothing in this case to show
that until the trial of the former action the defendant dis-
tinctly and openly disavowed the title of the owner with the
latter's knowledge. (See 2 C. J., Sec. 210, p. 124.) It would
be impossible to say, in view of these inconsistent findings,
upon which theory, as between that of an executed and
irrevocable license, and adverse possession, the judgment
was given in favor of the defendant.

For the reasons stated, we conclude that the order grant-
ing a new trial must be affirmed, and it will be so ordered.

                                        *Affirmed.*

BEARD, C. J., concurs.

BLYDENBURGH, J., being ill, did not participate in the
decision.