## FIELDHOUSE v. LEISBURG.

APPEAL AND ERROR—INSUFFICIENCY OF EVIDENCE TO SUSTAIN VERDICT—REAL PROPERTY—ADVERSE POSSESSION—TITLE BY PRESCRIPTION.

1. Where, under the law, the evidence wholly fails to support the verdict and judgment, the same will be set aside on error.

2. Where the owner of a single town lot built a fence enclosing by mistake with the lot owned a portion of the adjoining lot, but did not claim to be entitled to more than the one lot; *Held,* that his possession of such enclosed portion of the other lot was not such an adverse possession as would ripen into a title by prescription.

[Decided January 11, 1907.]          (88 Pac., 214.)

ERROR to the District Court, Carbon County, HON. DAVID H. CRAIG, Judge.

Suit brought by Katie Leisburg against Sarah T. Fieldhouse involving the title and right to possession to a part of a town lot, which the plaintiff claimed by adverse possession. Verdict and judgment for plaintiff. Defendant brought error. The facts are stated in the opinion.

*N. R. Greenfield,* for plaintiff in error.

The railroad company having conveyed the whole of lot 12 to the grantors of plaintiff in error, the fact that the company or its tenants continued in possession of part of the lot would not constitute a holding by adverse possession, but their possession would be regarded as either tenant or trustee for the plaintiff in error and her grantors. Nothing but an explicit disclaimer of such relation and a notorious assertion of right in themselves would be sufficient to change the character of such possession and render it adverse. (2 Tiffany Real Prop., 443; 1 Cyc., 1039, 1040.)

There must be privity of contract, blood or estate between consecutive occupants of land to establish continuity of adverse possession. (Simpson v. Downing, 23 Wend., 316; Smith v. Reich, 80 Hun, 287; McIntyre v. Downing, 28 Ind., 347; Price v. Jackson, 91 N. C., 11; Dhein v. Buescher, 83 Wis., 316; Lucy v. R. Co., 92 Ala., 246; Sherrin v. Brackett, 36 Minn., 152; Allis v. Field, 89 Wis., 327; Graevan v. Dieves, 68 Wis., 317; Sheppard v. Wilmot, 79 Wis., 15; Doswell v. De La Lanza, 61 U. S., 29; San Francisco v. Fudde, 37 Cal., 349; R. Co. v. Philyaw, 88 Ala., 264; Armstrong v. Risteau, 5 Md., 256; Atkins v.

Tomilson, 121 Mo., 487; Low v. Schaffer, 24 Pr., 239; Erick v. Church, 87 Tenn., 575; Jarrett v. Stevens, 36 W. Va., 445.)

Where title has ripened by adverse possession for the statutory period, it cannot be conveyed by a parol abandonment or relinquishment, but must be conveyed by deed or other like instrument.  (Parham v. Dudman, 66 Ark., 26; School Dist. No. 4 v. Benson, 31 Me., 381; Sage v. Rudnick, 67 Minn., 362; Allen v. Mansfield, 82 Mo., 688; Byers v. Sheplar (Pa.), 7 Atl., 182; Austin v. Bailey, 37 Vt., 219; Miliken v. Kennedy, 87 Ga., 463; Furlong v. Cooney, 72 Cal., 322; Cuellar v. Dewitt, 5 Tex. Civ. App., 568; McLane v. Canales, 25 S. W., 29 (Tex.); Lamoreaux v. Creveling, 103 Mich., 501.)  Plaintiff below must recover, if at all, upon the strength of her title, as in ejectment, and not upon the weakness of defendant's title.

If the fence was not built where it was for the purpose of marking the boundaries according to title, then neither party is bound by the existence of the fence as establishing either an agreed boundary line or adverse possession of the strip in controversy. (Khal v. Schmidt, 107 Ia., 550; Hunnewell v. Burchett, 152 Mo., 611; 1 Cyc., 1036, 1037.)

The term "adverse possession" is a generic term and the decisions are uniform in holding that "adverse possession" which will bar a legal title must be hostile and under a claim of title, actual, open, notorious, exclusive and continuous for the time necessary to create a bar of the statute of limitations.  (1 Cyc., 981; 1 Words & Phrases, 227-235.)  Exclusiveness of possession is a necessary element to the ripening of a title by adverse possession.  (1 Ency. L., 822-834; 1 Cyc., 1024-1026; Ward v. Cochran, 150 U. S., 597.)  The burden was upon plaintiff below to prove every essential element to constitute her alleged adverse title.  (1 Cyc., 1143, 1144, 1151, 1154, and cases cited.) The evidence did not support the plaintiff's claim of title. (Maher v. Brown, 56 N. E., 189.)

*McMicken & Blydenburgh,* for defendant in error.

There is nothing in the facts as to the sale of the property by the railroad company to prevent the acquirement of title by adverse possession to the strip in controversy. Privity may exist in a succession of relationships created by deed or other act or by operation of law. There was such privity as the law requires between the defendant in error and her grantors, and continuity of possession to permit the adverse possession to ripen into a title. (Carey v. Curtis, 3 How., 247; 41 Ia., 516; 20 Minn., 431; 10 Ency. L., 156; 1 Cyc., 1002; 106 Wis., 499; 81 N. W., 1027; 82 N. W., 534; Barron v. Barron, 122 Ala., 194; Doe v. Adams, 121 Ala., 664; Riggs v. Fuller, 54 Ala., 141; Neale v. Lee, 19 D. C., 5; Faloon v. Simshauser, 130 Ill., 649; Hale v. Gladfelder, 52 Ill., 91; Beal v. Brooks, 23 Am. Dec., 401; Kilbourne v. Lockman, 8 Ia., 380; Hanson v. Johnson, 50 Am., 199; Frost v. Courtis, 172 Mass., 401; Cooper v. Ord, 60 Mo., 420; Murray v. Romine (Neb.), 82 N. W., 318; Lantry v. Wold, 40 Neb., 374; McNeely v. Langan, 22 O. St., 32; Stattnische v. Lamb, 18. Neb., 619; Haynes v. Boardman, 119 Mass., 414; Witt v. Ry. Co., 38 Minn., 122; Low v. Schaffer, 24 Ore., 239; Meyer v. Hope, 10 Wis., 123; Bradstreet v. Huntington, 5 Pet., 439; Heavener v. Morgan, 41 W. Va., 428.)

The great weight of authority is to the effect that the privity requisite to constitute adverse possession by tacking the possession of the original entryman to that of another may be effected by any conveyance, agreement or understanding, that has for its object a transfer of the possession and is accompanied by a transfer, in fact, and the right of one holding adversely may be transferred by parol. (Doe v. Adams, 121 Ala., 664; Smith v. Chapin, 31 Conn., 330; Kepley v. Scully, 185 Ill., 52; Vandall v. St. Martin, 42 Minn., 183; Davock v. Nealon, 58 N. J. L., 21; Collins v. Lynch, 157 Pa. St., 246; Steel Co. v. Budzisz, 106 Wis., 499.)

Where facts sufficient to show title by adverse possession have been adduced and it is sought to avoid the effect of the statute of limitations, the burden is upon the one who would do so. (Shropshire v. Shropshire, 7 Yerg., 164; Miller v. Bungardner, 109 N. C., 412; Miller v. Franley, 23 Ark., 735; Miner v. N. Y., 37 N. Y. Super. Ct., 171.) Injunction is a remedy open to an adverse holder to protect his possession from trespass. (Shock v. Falls City, 31 Neb., 599; Severson v. Lexington, 69 Mo., 157; Bowen v. Jones, 2 Nov. Scotia Dec., 509.)

Beard, Justice.

The defendant in error commenced this action against the plaintiff in error, in the District Court of Carbon County, June 13, 1904. and in an amended petition filed June 21, 1904, alleged in substance: that the defendant in error was the owner of lot 11, in block 46, in the Union Pacific Railway Company's Fourth addition to the town of Rawlins, together with the improvements thereon, and for a long time had been in possession thereof; that said lot is forty feet in width, and one hundred and thirty-two feet in length, extending north and south; that defendant in error and her grantors for more than seventeen years prior to the commencement of this action have had open, notorious, hostile, adverse, exclusive, continuous and actual possession of a wedged-shaped strip of land ten feet in width at the north end and widening to fourteen and one-half feet on the south end and adjoining said lot 11, on its west side, said strip of land being a portion off the east side of what was designated in said plat of said block as lot 12; that said strip of land was fenced in with a portion of said lot 11 for more than seventeen years and had been occupied as above stated, and that the title to the same was in defendant in error and her grantors by right of prescription. That on June 13, 1904, the plaintiff in error unlawfully and maliciously entered upon said premises and commenced to build a fence along the line between said lots 11 and 12. The petition contains other allegations, but the foregoing are

sufficient to present the matters in controversy. The prayer was for an injunction and damages. The plaintiff in error answered admitting that defendant in error was the owner of said lot 11, and denying the other allegations of the petition. The case was tried to a jury, resulting in a verdict in favor of the defendant in error and awarding damages in the sum of $30. A motion for a new trial was denied by the court and judgment entered on the verdict against the plaintiff in error for said damages and costs, and enjoining plaintiff in error from entering upon the premises in dispute. From this judgment she brings error, and assigns as error the denying of the motion for a new trial, among the grounds for which were, that the court erred in refusing to instruct the jury at the close of plaintiff's evidence to return a verdict for the defendant for the reason that the evidence was not sufficient to sustain a verdict in favor of the plaintiff; and also that the verdict was not sustained by the evidence, and was contrary to law.

The defendant in error claims this strip of land, which is a part of lot 12, by prescription; and the real issue in the case is, whether or not that claim is sustained by the evidence. This renders it necessary for us to state briefly the substance of the evidence bearing upon that question.

It appears that the land included within the plat of this addition was patented by the United States to the Union Pacific Railroad Company February 24, 1877, and was platted as such addition by the railroad company April 30, 1886, the plat being filed in the office of the County Clerk of Carbon County May 7, 1886. The lots front north, and lot 12 adjoins lot 11 on the west.

Mrs. N. E. Price testified that she and her husband lived on what is known as lot 11, block 46, from 1880 for four or five years and built a small log house on the lot: "When we were there the lots were not sold to people. It was Union Pacific land. We had no title to the ground." M. B. Pendleton testified, that he bought the Price property in 1884 and lived there until 1890, and built a fence around

it in 1885, and sold to Robert Murray in 1891; that he had a warranty deed from Price to lot 11, and claimed all east of the fence. He was asked, "Did you have lot 11 surveyed and did you at the time you were in possession know where the boundary lines were?" Answer: "That was surveyed— Mr. Price had it surveyed before I moved into it and he showed me where the stakes was drove, and I put up the fence in accordance with those stakes; I knew where the boundary lines were." The evidence shows that this fence on the west extended through lot 12 north and south, and is on the west side of the disputed strip. Murray testified, that he lived on lot 11, block 46; moved there in 1891 and left in 1900; that he built an addition of two small rooms to the house in 1892, made some small repairs to the fence on the west side, put up a small rock milk house on the west side and put up a small coal shed; that he bought the property from Pendleton and got a deed for the improvements; that he sold the property to Minnie Hazleridge and gave whatever papers or agreements he had; that he was paying rent to the Union Pacific at that time. He was asked on cross-examination: "While you occupied lot 11, you had no intention of claiming any more ground than was on lot 11, did you?" Answer: "I understood that was our ground on that side of the fence." Q. "You had no intention of claiming any other ground than lot 11, did you?" A. "No." Q. "You had an idea that lot 11 was everything within that fence enclosed on the east side, didn't you?" A. "Yes, sir." Mrs. Murray corroborated her husband as to the time they occupied the premises, the improvements they made, etc., and states that she considered all of the property within the limits of the fence part of lot 11 and their own; that they had a lease of five years at a time; that they paid rent because their house stood on the railroad company's ground in front. The plat in evidence shows that only a small portion of the house stands upon lot 11, and about four by four feet of the southwest corner of it is on the land in dispute, the main

part of the house extending off the plat to the north, and that a shed and a closet are situated on the strip in controversy. Hazleridge sold to Greenfield, and Greenfield sold to Wallace. Wallace testified, that he bought the property from Greenfield and got a kind of lease and bill of sale; that he had no deed at that time; that he got a deed to lot 11 from the Union Pacific Railroad Company in 1902. He also states that Greenfield could not have given him a warranty deed because he (Greenfield) had no title to it himself; that he always understood the fence to be on lot 11. And when asked what he bought, leased or contracted for from Greenfield, he said: "Not any more than the bill of sale; you see I had to turn it into the Union Pacific when I got the deed—when I made final payment on the place." That he sold lot 11 to Jolleff. The defendant in error testified, that she bought lot 11 from Jolleff and received a deed for it; and when asked as to the size of the lot, she said she never measured it. "It was a lot 40 foot that I bought." The foregoing is the substance of the testimony introduced by the defendant in error in support of her claim of title by prescription, as to the title, claims of title, and claims of right of the several parties to the strip of land in controversy. It is not disputed that plaintiff in error has the record title to lot 12. It is clear that Price neither had nor claimed title to the ground. Pendleton claimed to have had a deed from Price for lot 11; that Price had the lot surveyed and showed him where the stakes were driven before he moved there in 1884, and that he built the fence, which has apparently caused the trouble, according to those stakes, in 1885. He is evidently mistaken in this, for the reason that there was no such lot as lot 11 at that time. The ground was not platted until April 30, 1886. Murray bought Pendleton's improvements and paid ground rent to the railroad company. Whatever ground he was in possession of he held as tenant of the company and he did not claim to have any right to anything more than lot 11. He states that he had no intention

of claiming any other ground than lot 11 ; but he supposed it extended to the fence.  Wallace claimed nothing but lot 11, and if it can be said that he acquired any rights to the land enclosed, under his purchase from Greenfield, he surrendered such rights to the railroad company when he received the deed to the lot.  The defendant in error claims title through Wallace and under a deed that did not purport to convey anything but lot 11, which she says was a forty-foot lot, which the evidence shows it to be, and she never claimed to own more than lot 11, and only claimed this strip of land because she believed it was a part of that lot. It is admitted that it is not and never was a part of that lot, and, therefore, she never had either color of title to it, nor did she hold it by any claim of right adversely to plaintiff in error.  The same may be said of the possession of Murray, if his possession, under the circumstances, could confer any rights upon his grantee.  He did not claim to be entitled to the possession of anything but lot 11, but occupied and claimed the right to occupy this strip solely because he thought it was a part of that lot.  He did not pretend to know where the true line between these lots was, nor does he or anyone else claim that this fence had been agreed upon as the true boundary line.  The plaintiff in error claimed lot 12, but did not know its true boundaries until 1902 or 1903, when she had the line surveyed.  She then served notice upon Jolleff to remove his buildings from the strip in dispute.  It does not appear that she at any time knowingly consented to the occupation of any part of lot 12 by the defendant in error or her grantors.  In Skinner v. Crawford, 54 Ia., 119, it is said: "Indeed, that it is the intention to claim title which makes the possession of the holder of land adverse is the doctrine upon which the decision in every case proceeds.  If it be clear that there is no such intention, there can be no pretense of adverse possession.  Therefore, it has been held that if the owner of the land, through inadvertancy or ignorance of the dividing line, includes a part of an adjoining tract within his en-

closure, it is not a possession adverse, or so in the nature of a disseizen as to prevent the true owner from conveying and passing the same by deed."

Numerous authorities to the same effect are cited in the notes in 1 Cyc., 1037 and 1038. (Scott v. Williams, 87 Pac. (Kan., 1906), 550.)

Defendant in error acquired title by deed from Jolleff. That deed was for lot 11 and no more. She says she bought a forty-foot lot; that she has and is entitled to no more. While it is the rule that this court will not set aside the verdict of a jury or the findings of the trial court on questions of fact where there is a conflict in the evidence and where there is evidence to support the verdict or findings, yet, where the evidence wholly fails, under the law, to support the verdict and judgment, it is our duty to set it aside. In our opinion such is the case here. The evidence of plaintiff below shows that the fence was built before the addition was platted and that after it was platted the occupants of lot 11 did not claim to be entitled to more than that lot. That being the case, their possession of the strip in controversy was not such an adverse possession as would ripen into a title by prescription; and the court should have directed the jury upon plaintiff's evidence, as requested, to return a verdict for defendant. This failure in the evidence was not cured by the evidence of the defendant. For the reasons above stated, the judgment of the District Court is reversed and the case remanded for a new trial.

*Reversed.*

POTTER, C. J., and SCOTT, J., concur.