**Ronald L. SIMEK, Appellant (Plaintiff/Counter-Defendant,)**

v.

**ROCKY MOUNTAIN, INC., d/b/a Chinook Log Homes, Appellee (Defendant/Counter-Claimant.)**

No. 98–34.

Supreme Court of Wyoming.

May 24, 1999.

Steven Cranfill of Law Office of Steven Cranfill, P.C., Cody, Wyoming, Representing Appellant.

Stephen L. Simonton of Simonton & Simonton, Cody, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

At issue in this case is whether the terms of a building contract between appellant, Ronald L. Simek (Simek), and appellee, Rocky Mountain, Inc., d/b/a Chinook Log Homes (Chinook), required Simek to allow Chinook to perform remedial construction prior to bringing suit for breach of the warranty of good workmanship. The district court granted summary judgment in favor of Chinook, finding that Simek's refusal to allow Chinook to correct alleged construction deficiencies, when it was ready and willing to do so, precluded further action against Chinook pursuant to the terms of the contract. We affirm.

## I. ISSUES

Simek, as appellant, presents a single issue for review:

1. The District Court erred in granting summary judgment on Appellant's first cause of action—breach of written contract.

Chinook, as appellee, raises three issues:

I. On appeal from summary judgment, may Appellant raise issues and theories not presented to the District Court?

II. Did Mr. Simek's affidavit present any genuine issues of material fact?

III. May Mr. Simek pursue a claim for contract damages after deliberately refusing to carry out the contract remedies spelled out by ¶ 17 of the Construction Contract?

* Retired November 2, 1998.

## II. FACTS

In the winter of 1993, Simek contacted Chinook to construct a large home on property Simek owned southwest of Cody. Building commenced in the spring of 1994, and approximately one month later, Chinook and Simek executed a written contract for the construction. Simek paid as the construction proceeded. By the end of 1994, $733,580.19 had been paid, and in January 1995, Chinook billed Simek $75,301.13 for the work done in December.

Sometime in December 1994 or January 1995, Simek claims he became aware of alleged structural and non-structural defects in the construction of the home. As a result, Chinook was told to leave the project during the first part of January. In the latter part of January, Simek informed Chinook that he had turned the matter over to his attorneys and would arrange for an inspection of the property. On February 1, 1995, Chinook met with Simek and their respective attorneys to discuss the outstanding bills. After some negotiation, Simek paid the January invoice for work done in December.

The parties and their attorneys met again on February 15, at which time Chinook gave Simek a Notice of Completion and a final statement of $31,546.14 submitted for the work done during the first part of January. The parties agreed that terms of the contract requiring an inspection within fifteen days of completion would be waived. Subsequently, Simek had the property inspected by Beaudette Consulting Engineers, Inc., who submitted a preliminary report on March 19, 1995. Chinook responded in April, contesting some of the representations in the report, but agreeing to remedy several of the problems noted. Simek conducted another inspection on April 25, and on May 5, 1995, Simek's attorney notified Chinook that its limited response to the alleged defects placed them in breach of the warranty provision of the contract as well as breaching the obligation to build the house in a good and workmanlike manner. Simek stated he intended to arrange for a comprehensive structural analysis, preparation of a plan of remediation, and the employment of a com-

petent builder of log homes to complete the project.

By May 30, 1995, Simek's engineer had agreed to a remedial program, and Chinook agreed to promptly do the work under the supervision of an engineer chosen by Simek at Chinook's cost. In June, however, Simek's attorneys notified Chinook that Simek refused to allow Chinook to do the repairs and that he had contracted with another builder to complete the home. Simek then filed a complaint in the district court in September 1995, alleging breach of written contract, breach of oral contract, and negligence.

Chinook denied any substantial construction defects and counterclaimed for the remaining invoice, alleging Simek failed to meet his duties under the contract. Chinook also maintained that Simek's exclusive remedy, pursuant to the contract, was to allow Chinook to repair any identified defects. Chinook claims it was prepared to do so, and such repairs would not exceed $11,000.00—a minuscule portion of the one million dollars estimated for the cost of the home.

Chinook then filed a motion for judgment on the pleadings as to Simek's claim for breach of written contract, or in the alternative, for partial summary judgment. After a hearing on the motion, the district court granted partial summary judgment to Chinook, finding that the one-year warranty in the contract clearly required Simek to allow Chinook to perform the repairs prior to bringing suit. After the district court granted Simek's motion for an order allowing the partial summary judgment to become a final order under W.R.C.P. 54, this timely appeal followed.

### III. STANDARD OF REVIEW

■ Summary judgment is appropriate when there are no material issues of fact and the moving party is entitled to judgment as a matter of law. We review the record in the light most favorable to the non-moving party, using the same factual materials and the same standards as the district court. *State ex rel. Bayou Liquors, Inc. v. City of Casper*, 906 P.2d 1046, 1048 (Wyo.1995). Conclusory statements or mere opinions are insufficient,

however, to satisfy an opposing party's burden to present evidence of a material issue of fact. *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d ·1256, 1257 (Wyo.1993) (*quoting Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987)). Moreover, we do not consider on appeal theories and points not raised in the district court, except for those issues which are jurisdictional or fundamental in nature. *Bredthauer v. TSP*, 864 P.2d 442, 446 (Wyo.1993) (*quoting Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo.1991)).

### IV. DISCUSSION

Chinook's motion for partial summary judgment was based on paragraph 17 of the construction contract, which states:

17. WARRANTY. Contractor agrees to perform all work required of Contractor under this Contract in a good and workmanlike manner in accordance with the plans and specifications attached hereto. Said Warranty is in lieu of all other warranties, express or implied, including but not limited to warranties of fitness for particular purpose, merchantability and habitability. Contractor agrees for a period of one (1) year from the date of completion of the work to promptly correct, repair or replace, at Contractor's expense, any defect in the construction resulting from Contractor's defective workmanship. * * *

THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY AND HABITABILITY.

(Emphasis in original.) Chinook argued that the plain and unambiguous language of the contract required Simek to allow Chinook to repair all claimed defects occurring within one year of the completion of the project. Since Simek failed to do so, Chinook contended Simek was barred from bringing a claim on the contract.

■ In response, Simek alleged that the remedy of paragraph 17 was not exclusive, but was an additional remedy pursuant to

paragraph 12 of the contract. The full text of paragraph 12 is as follows, with the portion relied upon by Simek emphasized:

12. CONTRACTOR'S RIGHT TO STOP WORK OR TERMINATE CONTRACT.

If the project should be stopped under Order of any Court or other public authority for a period of more than three (3) months through no act or fault of Contractor or of anyone employed by him or if the Owner should fail to issue any payment within the time provided herein or if Owner shall otherwise default under the terms and provisions hereof, then the Contractor may, upon three (3) days written notice to Owner, stop work or terminate this Contract and recover from the Owner payment for all work completed to date of termination and for any loss sustained upon any materials, labor, equipment, tools, construction equipment and machinery, including reasonable overhead expense, profit and damages arising out of Owner's default. In the event of any such default by Owner, Contractor shall be entitled to all costs and expenses incident to the enforcement of Contractor's rights hereunder including reasonable attorney's fees.

*The duties and obligations imposed by the Contract Documents and the right and remedies available thereunder shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.*

No action or failure to act by the Owner or Contractor shall constitute a waiver of any right or duty afforded any of them under the Contract, nor shall any such action or failure to act constitute an approval of or acquiescence in any breach thereunder, except as may be specifically agreed in writing.

As a preliminary matter, we note that Simek did not argue to the district court that paragraph 17 was not triggered as of the time he tendered the list of alleged defects to Chinook. Neither did Simek argue the terms of the contract were ambiguous. Instead, the only issue presented to the district court was whether paragraph 12 allowed Si-

mek to deny Chinook the opportunity to remedy any alleged defects, even though Chinook agreed to perform the work under the supervision of a professional engineer designated by Simek. We find that the unambiguous language of the contract did not afford Simek that luxury.

■■■ We have held that the parties' subsequent disagreement about the meaning of a contract does not establish an ambiguity. *Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo.1996) (*quoting Moncrief v. Louisiana Land and Exploration Co.,* 861 P.2d 516, 524 (Wyo. 1993)). In reading a contract, our primary purpose is to determine the true intent and understanding of the parties at the time and place the contract was made. *Examination Management Services, Inc.,* 927 P.2d at 690 (*quoting Treemont, Inc. v. Hawley,* 886 P.2d 589, 592 (Wyo.1994)). We construe the contract as a whole, and strive to avoid a construction which renders a provision meaningless. *Examination Management Services, Inc.,* 927 P.2d at 690 (*quoting Moncrief,* 861 P.2d at 523–24). " 'Similarly, we strive to reconcile by reasonable interpretation any provisions which apparently conflict before adopting a construction which would nullify any provision[.]' " *Examination Management Services, Inc.,* 927 P.2d at 690 (*quoting Moncrief,* 861 P.2d at 524).

The current dispute appears to stem from the contention that the district court held that paragraph 17 provided the exclusive remedy for Chinook's breach of the warranty of good workmanship. We do not read the district court's order to so hold. Instead, we find the district court correctly determined that the procedure by which Simek may claim breach of the warranty of good workmanship under paragraph 12 required any suit initiated after a notice of completion to be preceded by notice to Chinook of claimed defects, and an opportunity to promptly correct them pursuant to paragraph 17.

In *State Surety Co. v. Lamb Const. Co.,* 625 P.2d 184, 194 (Wyo.1981), we reiterated the principle that it is necessary "for parties to follow the terms and conditions of contracts entered into by them." The language of paragraph 17 specifically addresses Chi-

nook's obligation to correct any alleged defect identified within one year of the completion of the project. Thus, the contractual terms contained in the warranty of good workmanship provide that Chinook will breach the warranty only when Chinook refuses or fails to correct the listed defects. The importance of such a provision is easily discerned when viewed in light of Chinook's affidavit that the repairs could be accomplished for approximately $11,000.00, while Simek claims damages of over $100,000.00.

Were we to construe the plain language of the contract in the fashion urged by Simek, the provisions of paragraph 17 specifically identifying Chinook's control over its warranty of good workmanship would have no meaning. In this case, it is undisputed that Chinook gave Simek a notice of completion and Simek provided the list of alleged defects pursuant to paragraph 17 of the contract. It is also undisputed that Simek's expert prepared a list of remedial actions which Chinook agreed to perform in a timely manner. Simek's affidavit, the only evidence presented in opposition to Chinook's motion for partial summary judgment, provides no objective basis for Simek's refusal to allow Chinook to perform the repairs, especially in light of Chinook's voluntary agreement to proceed under the supervision of a professional engineer. Thus, the district court correctly found that, at the time Simek refused to allow Chinook to perform the remedial work, Chinook was not in default. Therefore, the order granting partial summary judgment in favor of Chinook on Simek's breach of contract claim is affirmed.

## V. CONCLUSION

The contract between Simek and Chinook unambiguously provided that Chinook would have the opportunity to correct any alleged defects in the project prior to Simek bringing suit for a breach of the warranty of good workmanship after receiving notice of completion of the project. Simek refused to allow Chinook to follow the procedures set forth in the contract. Therefore, the district court's order awarding partial summary judgment on Simek's claim for breach of contract is affirmed.