**Stanley HOVENDICK and Lillian Hovendick, husband and wife, Appellants (Defendants),**

v.

**Willis RUBY, Appellee (Plaintiff).**

No. 99–197.

Supreme Court of Wyoming.

Aug. 22, 2000.

---

Representing Appellant: Robert A. Nicholas, Riverton, Wyoming.

Representing Appellee: Richard D. Gist, Lander, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY,* GOLDEN, and HILL, JJ.

GOLDEN, Justice.

The trial court granted summary judgment to Appellee Willis Ruby (Ruby) on his adverse possession claim of an 18.94 acre parcel to which Appellants Stanley and Lillian Hovendick (Hovendicks) hold the legal title of

* Retired June 2, 2000.

record after determining that, for a twenty year period, Ruby had believed that a fence south of the actual boundary represented the true boundary line. The primary issue presented by this appeal is whether summary judgment can be granted on his belief without considering whether that fence is a fence of convenience. An additional issue presented is whether an oral contract to settle the dispute is enforceable.

We hold that Ruby's belief, while establishing a presumption of adverse possession, requires consideration of whether the fence was a fence of convenience. Finding that genuine issues of material fact exist concerning the nature of the fence, we reverse the order granting summary judgment and remand for trial. We also hold that the district court's ruling on the issue of the oral contract is in error and remand for further reconsideration.

## ISSUES

The parties agree that the single issue for our review is whether the district court erred as a matter of law when it granted summary judgment to Appellee.

## FACTS

Ruby purchased his ranch from the Veaches in 1973. The ranch is located in Fremont County between Lander and Hudson, Wyoming. Part of the ranch land purchased is a large island known as Rogers Island, made up of land lying between channels of the Popo Agie River. Rogers Island includes parts of Lots 3 and 4 of Section 35. In 1993, Hovendicks purchased their ranch from Bill Frank. The ranch lies in parts of Lots 2, 3, and 4 of Section 35 and included 18.94 acres that lies adjacent to Rogers Island that Ruby now claims by adverse possession. As the attached map shows, the disputed 18.94 acre parcel is west of Ruby's legal property boundary. To the north of the disputed parcel lies the Popo Agie River, and to the south lies a channel of the river. South of the channel is a fence that runs east to west which Ruby claims he believed was the true boundary fence, and which we shall call the disputed fence. The disputed fence connects to another fence that runs north and south

and apparently is a true boundary fence separating Lots 2 and 3. The legal description of Hovendicks' property indicates that its northern boundary is the middle of the Popo Agie River, and the disputed fence is south of the boundary.

In 1928, the disputed parcel of land was actually part of the river. As river water was diverted, the disputed land emerged but was swampy and of little value. Hovendicks claim that Frank represented that when he bought the ranch, the disputed land was partially enclosed by the disputed fence placed south of the channel to keep cattle out of the river. Frank's son, Gary Frank, submitted a supplemental affidavit indicating that his father knew the true boundary line was the middle of the river's north channel, but that the swampy condition of the land dictated that the disputed fence be placed south of the south branch channel. Frank is also said to have represented to Hovendicks that he knew Ruby used the land, but did not care because the land was of little value. The record does not indicate when the disputed fence was actually erected and by whom. The Hovendicks claim that the disputed fence is a fence of convenience and was never intended as a boundary fence.

When Ruby bought his ranch, he and Veach inspected various parts of the ranch and much of the ranch perimeter fences, including Rogers Island. Ruby claims that Veach represented to him that he owned all of the land north of the disputed fence and Frank owned all of the land south of the disputed fence. From 1973 until 1993, Ruby and Frank both repaired and maintained the fence. The location of the disputed fence was never changed except in the 1980s when Frank built a water gap for his cattle to reach water, and he changed part of the fence from barbed wire to a pole fence. Ruby claims that for each of these changes, Frank asked for and received his permission before making these changes. He claims that from 1965 to 1993, Frank considered the fence to be the boundary fence, and from 1973 to present, Ruby has always considered the fence to be the boundary fence between his property and Frank's.

In 1993, Hovendicks learned that Ruby believed that he owned the disputed parcel, and after proving to Ruby that Hovendicks had legal title, Hovendicks claim that Ruby's attorney suggested that Ruby may have a claim for adverse possession. Hovendicks claim that later in 1993, after discussing their respective ownership claims, Hovendicks and Ruby mutually agreed to split the disputed parcel, each taking about one half of it. Hovendicks then moved the fence and, for the next five years, used that portion exclusively and paid taxes on the property. Hovendicks cleared several acres and planted grass seed for pasturing horses. Hovendicks claim that both parties abided by this agreement for five years.

In 1996, Frank died, and his estate closed in 1998. Hovendicks contend that Ruby waited until after Frank died before asserting his claim. Ruby claims that his business partnership with Hovendicks' son caused him to delay removing the fence and filing his adverse possession claim. He filed that claim on June 19, 1998. Hovendicks answered that Frank had granted Ruby permissive use of the land, denied that he had adversely possessed it, asserted that a survey demonstrated conclusively that they owned the disputed parcel, and claimed that the parties had an oral agreement to divide ownership of the disputed parcel.

After discovery, motions for summary judgment were filed, and Ruby supported his motion with his affidavit and the affidavit of Gary Frank, Bill Frank's son. The trial court found that Ruby believed that he had purchased the land in 1973, and that between 1973 and 1993, had used the disputed land to pasture bulls and horses, and had used it during calving season. During this time period, Frank had twice asked permission to alter the fence. The court further found that Ruby's belief that he owned the disputed land continued until 1993, and the oral agreement to divide ownership of the disputed land was of no consequence because Ruby's adverse possession had matured in 1983, ten years after his purchase of the land and ten years before Hovendicks purchased their ranch from Frank. Summary judgment was granted in favor of Ruby, and this appeal followed.

## DISCUSSION

### Standard of Review

 Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Mountain Cement Co. v. Johnson*, 884 P.2d 30, 32 (Wyo. 1994); W.R.C.P. 56(c). We review a summary judgment in the same light as the district court, using the same materials and following the same standards. "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Four Nines Gold, Inc. v. 71 Constr., Inc.*, 809 P.2d 236, 238 (Wyo.1991). Summary judgment serves the purpose of eliminating formal trials where only questions of law are involved. *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo.1997); *England v. Simmons*, 728 P.2d 1137, 1141 (Wyo.1986). We review a grant of summary judgment by deciding a question of law de novo and afford no deference to the district court's ruling on that question. *Sammons v. American Auto. Ass'n*, 912 P.2d 1103, 1105 (Wyo.1996); *Blagrove*, 934 P.2d at 1275.

### Presumption of Adverse Possession

 In order to establish adverse possession, the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title. Possession must be for the statutory period, ten years. When there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. However, if a claimant's use of the property is shown to be permissive, then he cannot acquire title by adverse possession.

*Hillard v. Marshall,* 888 P.2d 1255, 1258–59 (Wyo.1995) (citations omitted).

■ The district court determined that Ruby's belief, although mistaken, that the disputed fence was a boundary fence and the fact that Frank on two occasions asked his permission to alter the fence supported a ruling that Ruby had adversely possessed the disputed parcel since 1973 and the statutory period matured in 1983. Ruby's mistaken belief does not establish adverse possession; it establishes a presumption of adverse possession:

> When a man has occupied a piece of ground, though under a mistaken belief as to the true boundary, for the period prescribed by law openly, notoriously, exclusively and in a manner plainly indicating that he acted as owner thereof, the presumption should be, in the absence of explanatory circumstances showing the contrary, that he occupied the land adversely and under a claim of right, casting the burden of explaining such possession upon the person who disputes his right.

*Hillard,* 888 P.2d at 1259 (quoting *City of Rock Springs v. Sturm,* 39 Wyo. 494, 517, 273 P. 908, 915–16 (1929)).

■ Hovendicks claim that facts showing that the disputed fence is a fence of convenience are a satisfactory explanation of possession showing that Ruby did not adversely possess the disputed land, and where those facts are demonstrated, summary judgment is improper. Hovendicks contend that material questions of fact exist whether the fence was a boundary fence or a fence of convenience requiring reversal of the order of summary judgment and remand for trial.

We have described the effect of a fence of convenience on a presumption of adverse possession in this way:

> In some circumstances, enclosing land in a fence is sufficient to "raise the flag" of an adverse claimant. However, a fence kept simply for convenience has no effect upon the true boundary between tracts of land. This is so because a fence of convenience creates a permissive use, and a permissive user

"cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claims or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile."

*Kimball v. Turner,* 993 P.2d 303, 306 (Wyo. 1999) (quoting *Hillard,* 888 P.2d at 1261) (citations omitted).

■ In this case, Ruby has established a presumption of adverse possession; however, Hovendicks have presented evidence that the disputed fence was a fence of convenience. "Whether a fence is a boundary fence or merely one of convenience is a question of fact." *Kimball,* 993 P.2d at 305; *see also Hillard,* 888 P.2d at 1260. We find that Hovendicks' factual evidence on this issue is sufficient to reverse the grant of summary judgment and remand for trial on this issue.

■ Hovendicks next raise the issue of the effect of the 1993 oral agreement to divide the disputed land, contending that, although a trial could determine that Ruby had adversely possessed the disputed land in 1983, a factual issue exists whether, in 1993, the parties mutually agreed to divide ownership of the land. Ruby contends that the statute of frauds prohibits oral agreements for land.

The statute of frauds, Wyo. Stat. Ann. § 1–23–105 (LEXIS 1999), provides in relevant part:

> (a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith:
>
> \* \* \*
>
> (v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year.

■ "The contract for the sale of real estate as contemplated by the statute is one

for the transfer of property or real estate, for a fixed price in money or its equivalent." *Miller v. Stovall,* 717 P.2d 798, 802 (Wyo. 1986), *overruled on other grounds,* 811 P.2d 287, 290 (Wyo.1991) (citing *Allen v. Allen,* 550 P.2d 1137, 1142 (Wyo.1976)). Assuming without deciding that the alleged oral agreement between Hovendicks and Ruby involved a conveyance of land for proper consideration and is subject to the statute of frauds, we note that in *Miller* we referred favorably to several authorities on the law of real property as follows:

> [6 Thompson on Real Property § 3035, p. 508 (1962) ] states clearly that "oral agreements changing known boundary lines violate the statute of frauds." The rationale is that " * * * if the boundary line is not doubtful or in dispute, an oral agreement for its change is invalid, this involving an actual transfer of land, within the statute. * * * " 2 Tiffany, The Law of Real Property § 653, p. 679 (3d. ed.1939).

*Miller,* 717 P.2d at 802. Hovendicks contend that the parties' substantial part performance of the contract makes it enforceable despite the statute of frauds.

We have held that either full or part performance of a contract for the sale of land will avoid the statute of frauds defense. *Davis v. Davis,* 855 P.2d 342, 346 (Wyo.1993). The doctrine of part performance, however, will not be applied to avoid the statute of frauds unless the oral agreement sought to be enforced is just and certain and the elements of possession and part or full payment or its equivalent are proved beyond the possibility of findings to the contrary. *Davis,* 855 P.2d at 347. The record does not show that Ruby raised the statute of frauds as a defense to Hovendicks' motion in traverse of summary judgment and for trial, claiming that the oral argument was enforceable. The trial court ruled that, in light of its decision

that Ruby's claim for adverse possession had matured in 1983, the oral contract need not be considered at all. On appeal, neither party analyzes whether the statute of frauds applies to the oral agreement or whether *Davis'* elements of part performance are established, and the limited record does not allow our further review.

We find, however, that the trial court erred as a matter of law in deciding that the alleged oral contract was of no consequence, and we find no proper legal ground in the record for affirming it. *In Re HC,* 983 P.2d 1205, 1209 (Wyo.1999). Accordingly, our standard of review requires that we must examine the record from the vantage point most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may fairly be drawn from the record. Hovendicks point to evidence that, as a result of the oral agreement, they took possession of their half of the disputed land, fenced on the newly established boundary line, cleared brush and planted grass seed for pasturing horses, and paid taxes. Ruby denies that there was any oral agreement. We agree that this evidence presents a factual question whether the parties reached an oral agreement to divide the land. Whether that oral agreement is unenforceable because of the statute of frauds presents a question of law that requires we reverse the grant of summary judgment and remand for reconsideration of the issue in light of our decisions in *Miller* and *Davis.*

The order granting summary judgment is reversed and remanded for further consideration of whether the parties have divided ownership of the land by oral contract, and if that does not settle all claims, the case is remanded for trial on the issue of whether the disputed fence is a boundary fence or a fence of convenience.

Scale 1 = 200 ft

Note: shaded area represents river meander as of the 1928 General Land Office survey.

——·—— Indicates existing fence line

Disputed Land

Lot 4 (Rogers Island)

Lot 3

Lot 2

Disputed Fence

THOMAS, Justice, dissenting.

Respectfully, I must dissent from the resolution of this case according to the majority opinion. I am satisfied that the trial court correctly entered summary judgment in favor of Ruby, albeit I rely upon a different correct, legal ground from that presented in the order granting summary judgment to Ruby and the clarification of that order that was entered later. The correct resolution of this case is reached by invoking the doctrine "of recognition and acquiescence of a boundary line," which was utilized by this court in *Carstensen v. Brown*, 32 Wyo. 491, 236 P.

517, 519 (1925). That doctrine obviates any question of material fact about a fence of convenience, and supports the acquisition of title by Ruby, in addition to the doctrine of adverse possession. With respect to the contract claimed by the Hovendicks, there clearly was not substantial performance of any obligation owed by the Hovendicks to Ruby, and the trial court correctly ignored that claim. I would affirm the Order entered by the trial court.

This Court first recognized and applied the doctrine "of recognition and acquiescence of a boundary line" in *Carstensen*, 236 P. at 520–521. The doctrine was invoked to award title to Brown, even though in an earlier opinion in the same case, *Carstensen v. Brown*, 26 Wyo. 356, 185 P. 567, 569 (1919), the court had ruled that there was not sufficient evidence to support a claim of adverse possession. The result of the second case was described in *City of Rock Springs v. Sturm*, 39 Wyo. 494, 273 P. 908, 911 (1929), as "diametrically opposite to that reached on the first appeal."

In his usual, diligent fashion, Justice Blume examined the doctrine critically and thoroughly. The opinion explained the doctrine of acquiescence and recognition and distinguished it from adverse possession saying:

> The doctrine of recognition and acquiescence of a boundary line is upheld by many authorities. 9 C.J. 244; Tiffany, Real Property (2d Ed.) § 295; Thompson on Real Property, § 3112. It is sometimes referred to as acquiescence in, or as a practical location of, or as an implied agreement as to, a boundary. Considering all of the various jurisdictions in the United States, the doctrine is still in a chaotic condition, and no one has yet undertaken to point out definitely the circumstances under which it is applicable. Some of the authorities consider long acquiescence only as evidence of a boundary, which may be contradicted. Tiffany, supra, § 295. Other authorities say that an agreement may be inferred or presumed from such acquiescence. Note, 110 A.S.R. 685. The doctrine seems to occupy a middle ground between adverse possession and estoppel

in pais. It is frequently held that, in order to work an estoppel by conduct, it is necessary that the party against whom it is claimed should have knowledge of the true boundary (Bigelow on Estoppel [16th Ed.] p. 674) and, as said in *Carstensen v. Brown*, 26 Wyo. [at] 360, 185 P. 567, where both parties are ignorant thereof and have an equal opportunity to know the facts, no estoppel arises. It may be said, however, in this connection, that in many states long acquiescence is accepted as a substitute for knowledge of the facts, and an estoppel may arise in cases of mistake by acquiescence, in connection with a change of situation. Bigelow, supra, p. 675. *See Lehman v. Smith*, 40 S.D. 556, 168 N.W. 857, where some distinctions between the two doctrines were pointed out. In adverse possession it is requisite, according to the majority of decisions, including *Fieldhouse v. Leisberg*, 15 Wyo. 207, 88 P. 214, that there be an intent to claim up to a marked division line without reference to where the true line may be, and, if it appears that there was only an intent to hold to the true line, the possession is not adverse, and no title by prescription may be obtained. Note, 15 Ann. Cas. 827; Note Ann. Cas. 1912A, 450; 2 C.J. 139. Indeed, some of the authorities have held that no title by adverse possession can be acquired through a mistake, although in the greater number of cases at least some mistake exists when possession is taken of another's property. Note, 21 L.R.A. 831. Such holding practically results in this, that the intent necessary to make possession adverse is akin to a felonious intent (Ibid), thus virtually making it impossible to gain any prescriptive title. The trend of opinion is said in a note to 33 L.R.A. (N.S.) 930, to be against disturbing a person whose visible boundaries have existed for the period of the statute of limitations. Indeed, some of the authorities have distinctly repudiated the view that it is necessary to claim beyond the true boundary, and that, if a man occupies and claims what he believes to be his own, his possession is adverse and ripens into title upon the expiration of the statutory time. *Yetzer v. Thoman*, 17 Ohio St. 130, 91 Am. Dec. 122;

*French v. Pearce,* 8 Conn. 439, 21 Am. Dec. 680; *Bayhouse v. Urquides,* 17 Idaho, 286, 105 P. 1066; Notes, 15 Ann. Cas. 829, Ann. Cas.1912A, 451; *Ramsey v. Ogden,* 23 Or. 347, 31 P. 778. It would seem that in Ohio and Indiana the courts treat recognition and acquiescence in a boundary line for a period equal to that of the statute of limitations the same as adverse possession for a like period. *Yetzer v. Thoman, supra; Helbling v. [Werk] Realty Co.,* 2 Ohio App. 478 [(1913)]; *Rutledge v. Presbyterian Church,* 3 Ohio App. 177; *Epstein v. Kraft,* 16 Ohio Cir. Ct. (N.S.) 251; *Thomas v. Webber,* 13 Ohio N.P. (N.S.) 301; *Scheigert v. Boyer,* 69 Ind.App. 674, 122 N.E. 670; *Rosenmeier v. Mahrenholz,* 179 Ind. 467, 101 N.E. 721; *Dyer v. Eldridge,* 136 Ind. 654, 36 N.E. 522. But, according to most of the courts, it is not identical with it, and the two doctrines are treated as distinct. *Miller v. Mills County,* 111 Iowa, 654, 82 N.W. 1038; *Morley v. Murphy,* 179 Iowa, 853, 162 N.W. 63; *Hubbard v. Stearns,* 86 Ill. 35; *Brummell v. Harris,* 148 Mo. 430, 440, 50 S.W. 93; *Schwartzer v. Gebhardt,* 157 Mo. 99, 104, 57 S.W. 782. *See Lehman v. Smith, supra.* The distinction is pointed out in the last-cited case [*Schwartzer*] as follows:

"It is well settled that the possession of coterminous proprietors under a mistake or in ignorance of the true line, between them and without intending to claim beyond the true line, will not work a disseisin, and set in motion the statute of limitation in favor of either, but it is equally as well settled that when such proprietors, in ignorance of the true line, fix and agree upon a permanent boundary line, and possession is taken accordingly, the agreement is binding upon them, and those claiming under them. *Jacobs v. Moseley,* 91 Mo. 457, 4 S.W. 135. Such an agreement is not within the statute of frauds. *Taylor v. Zepp,* 14 Mo. 482; *Blair v. Smith,* 16 Mo. 273; *Turner v. Baker,* 64 Mo. 218; *Acton v. Dooley,* 74 Mo. 63. Nor is it necessary that such an agreement should be shown by direct evidence, but it may be inferred from the acts and conduct of the parties, and their long acquiescence and recognition of the line established as the true line."

*Carstensen,* 236 P. at 519–20.

In the course of the opinion of the court, Justice Blume alluded to probably all of the then extant authorities, including scholarly treatises. A disagreement among authorities as to a requirement for a dispute or uncertainty with respect to the boundary line was noted. Further, a distinction was made between the passage of time in the case of an express agreement as to a boundary line as distinguished from an implied agreement. Acquiescence for only a short period of time would not be perceived as demonstrating a clear intention to recognize a permanent boundary, but the continuation of such acquiescence for a period of time equivalent to the statute of limitation for adverse possession seems to have been required by the majority of the authorities. The acquiescence must be bilateral, and with knowledge or notice of the claims of the other party. It was in this context that the opinion went on to state:

Thus the existence of a division fence does not alone show the requisite facts. It may be kept up only for the convenience of the parties. 9 C.J. 246. But we think we may safely say that when there is recognition and acquiescence of the parties in a boundary line, uncertain or in dispute in the first instance, for a period equal at least to the prescriptive period, under facts and circumstances which should be considered equivalent to an express agreement, and the land on each side of the line is occupied by the respective parties as their land, no good reason exists why the parties should not be bound to the same extent as though such express agreement had been made and carried out, particularly when facts exist which would make any other holding inequitable.

*Carstensen,* 236 P. at 521.

After quoting from other authorities to support this proposition, the opinion then explains that, while there may be room for the rule of mutual mistake with respect to the doctrine of acquiescence and recognition, normally a simple mutual mistake as to the true boundary would not interfere with the

application of the doctrine. The holding of the court then is announced in the context of a recitation of the material facts:

We think that the rule mentioned is applicable in the case at bar. That the boundary line was uncertain is unquestioned; it is even uncertain now. With that in view the predecessor in interest of plaintiff erected a fence. This was about 1901. Greet, defendant's predecessor in interest, established his homestead in accordance with that line, and so did defendant, when he bought of Greet in 1904. Plaintiff purchased his land in 1904; he knew that Greet, and subsequently defendant, were in possession of the land east and north of the division fence, presumptively claiming ownership thereof. The parties in 1904 and 1905 jointly built an irrigating ditch, partially on defendant's land, which was used by defendant to irrigate the land east of the fence, and by plaintiff to irrigate land west of the fence. The fence was kept up jointly; each of the parties doing more or less repair work on it from time to time. Plaintiff and defendant exchanged farm work at least as early as 1908; the former often helping the latter farm said land on the east side of the dividing line. In fact, plaintiff helped defendant in breaking up some of his land and in putting it in cultivation. The witness Ilg testified that plaintiff showed him the boundary line on the northwest of the latter's land, a quarter of a mile west of the northern part of the fence mentioned. This was in effect the same thing as though the fence in question had been pointed out as a boundary line, and was, if true, a distinct recognition that the fence was the true boundary line. From 1901 to 1919 the fence stood as a dividing line, and was never questioned as such, at least so far as came to defendant's knowledge, until shortly before this suit was brought in January, 1919.

*Carstensen,* 236 P. at 523.

This doctrine still is recognized in Wyoming, although it has not been applied in the following cases. *Kimball v. Turner,* 993 P.2d 303 (Wyo.1999); *Coumas v. Transcontinental Garage,* 68 Wyo. 99, 230 P.2d 748 (1951);

*Hudson v. Erickson,* 67 Wyo. 167, 216 P.2d 379 (1950); *Johnson v. Szumowicz,* 63 Wyo. 211, 179 P.2d 1012 (1947); *State v. Vanderkoppel,* 45 Wyo. 432, 19 P.2d 955 (1933); and *Porter v. Carstensen,* 40 Wyo. 156, 274 P. 1072 (1929). None of these cases arose in the context of a summary judgment, and all of them were found to be distinguishable from *Carstensen* for various reasons. This case was not decided on the doctrine of acquiescence and recognition, but it indeed serves as a correct, legal ground upon which we can affirm the trial court. We will affirm a grant of summary judgment if it can be sustained on any legal ground appearing in the record. *Franks v. Olson,* 975 P.2d 588, 592 (Wyo.1999); *Newberry v. Board of County Com'rs of Fremont County,* 919 P.2d 141, 144 (Wyo.1996); *Duncan v. Town of Jackson,* 903 P.2d 548, 551 (Wyo.1995); *Bidache Inc. v. Martin,* 899 P.2d 872, 874 (Wyo.1995); *Moncrief v. Louisiana Land and Exploration Co.,* 861 P.2d 516, 523 (Wyo.1993).

An analysis of the evidence, in the form of the several affidavits, in the record in this case discloses the absence of any admissible or relevant evidence that the fence in question was a fence of convenience. Some of that evidence relates to interaction between Ruby and Bill Frank, who was the Hovendicks' predecessor in interest. Other evidence relates to interaction between Bill Frank and F.F. Veach, who was Ruby's predecessor in interest. What evidence there is is consistent only with the proposition that the fence was a boundary fence.

In his affidavit, Willis Ruby stated:

After I bought the Veach ranch in 1973 until Bill Frank sold his ranch to the Defendants [Hovendicks] in 1993, I had talked to Bill Frank many times about the original boundary fence located south of the river channel. Many of these conversations took place at the fence itself. Many of the conversations concerned repairing the fence because either his or my livestock had gone through it or the fence had gotten damaged by wild game or by just general winter conditions. From time to time between 1973 and 1993, both Bill Frank and I repaired the fence when it got damaged. When discussing this fence it

was always understood and agreed that the existing fence, the original boundary fence, was the boundary fence between his land and mine. He never used any of the land on my side of the fence and I never used any of the land on his side of the fence. When we, or either of us repaired, the fence, it was always kept in the same place except that about 15 or 16 years ago when Bill Frank and I were out along the fence, Bill Frank asked me if he could move a piece of the fence across the river so he could have a water gap to water his livestock. * * *

* * * Bill Frank told me he never claimed any ownership of any of the Disputed Land and that he knew that the people he bought his ranch from in January 1966 never claimed any interest in the Disputed Land either.

In his initial affidavit, provided for Ruby, Gary Frank reported that Veach complained about the trespass by a rodeo bull owned by his father, Bill Frank, and told his father to keep his bulls off of Veach's land. Gary Frank also reported that on another occasion Veach complained about a fire started on the Frank land that burned some of the foliage on Veach's land. Gary Frank also stated that if his father had thought he owned the land he would not have requested permission to build the water gap, and he would have argued with Veach when Veach complained. Gary Frank stated that the only fence that ever divided his father's ranch from the ranch land owned by Veach and later Ruby was the fence relied upon by Ruby.

In opposing the Motion for Summary Judgment filed by Ruby, the Hovendicks presented a second affidavit from Gary Frank, which was "intended to supplement and clarify my earlier affidavit and otherwise set forth additional facts that I have been asked to set out for purposes of the lawsuit between Mr. Ruby and the Hovendicks." The affidavit is a contrived effort to structure a genuine issue of material fact. After stating his understanding that the property line of Bill Frank's ranch was the middle of the south branch of the Big Popo Agie River, and noting that you could not put a fence in the middle of the river and that it must be placed

in a more convenient and practical location, Gary Frank states that "[t]he current fence was the boundary that separated dad's use of his property from his neighbors [sic] property and visa versa." He further states that he knows "from practical experience as a rancher for many years that fences are placed where they are most convenient and most practical for the operation if the actual boundary line is either not accessible or not practical." He then gives his opinion that the fence in issue was so constructed. Following the recitation of a number of facts designed to support that opinion, Gary Frank concludes his second affidavit by saying, "[t]he fence was placed where it was, most likely, because that was the most practical place to put it."

For at least a quarter of a century, it has been the rule in Wyoming that:

[f]or a summary judgment motion to be successful, the movant must make a prima facie showing that no genuine issue of material fact exists. *Clark v. Industrial Co. of Steamboat Springs, Inc.*, 818 P.2d 626, 628 (Wyo.1991) (quoting *TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204, 1208 (Wyo. 1990)). The burden thereafter shifts to the opposing party to demonstrate the existence of a genuine issue of material fact. *Weber v. McCoy*, 950 P.2d 548, 551 (Wyo. 1997).

*Gordon v. Spectrum, Inc.*, 981 P.2d 488, 491–92 (Wyo.1999). *See Wells v. Board of Trustees of Laramie County School Dist. No. 1*, 3 P.3d 861, 864 (Wyo.2000); *Hittel v. WOTCO, Inc.*, 996 P.2d 673, 677–78 (Wyo.2000); and *Wood v. Trenchard*, 550 P.2d 490, 492 (Wyo. 1976).

After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. Wyo..R.Civ.P. 56(e); *Hyatt v. Big Horn Sch. Dist. No. 4*, 636 P.2d 525, 528 (Wyo.1981). The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987), and cannot rely only upon alle-

gations and pleadings, *Hyatt*, 636 P.2d at 530, and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden. *Boehm*, 748 P.2d at 710.

*Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo.1994). A number of Wyoming cases invoke and apply these rules. *E.g., Simek v. Rocky Mountain, Inc.*, 977 P.2d 687, 689 (Wyo.1999); *Smith v. Board of County Com'rs of County of Sublette* 891 P.2d 88, 91 (Wyo.1995); *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1257 (Wyo. 1993); *Moore v. Lubnau*, 855 P.2d 1245, 1248 (Wyo.1993); *Oatts v. Jorgenson*, 821 P.2d 108, 110–11 (Wyo.1991); *TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204, 1208 (Wyo. 1990); and *Claassen v. Nord*, 756 P.2d 189, 194 (Wyo.1988).

Applying these rules to the record in this case, it is clear that the majority does not question that by his affidavit and the first Gary Frank affidavit, Ruby made out a prima facie case for title by adverse possession. While the majority opinion alludes to contentions by the Hovendicks found in their pleadings, the only source of any factual information that could meet the requirements of W.R.C.P. 56(e)[1] is the second affidavit of Gary Frank. It is replete with conclusory statements and opinions. Any factual matter that would conform to W.R.C.P. 56(e) is neither relevant nor material. To the extent that the existence of a fence of convenience might be inferred, his affidavit would require sequential inferences, which would fail the rule found in *Matter of Estate of Roosa*, 753 P.2d 1028, 1035 (Wyo.1988). Even more egregious is that still these inferences would not possess the requisite quality to meet the direct testimony offered by Ruby in his affidavit. *Matter of Estate of Roosa*, 753 P.2d at

1035; *Blackmore v. Davis Oil Co.*, 671 P.2d 334, 337 (Wyo.1983). In my judgment, the Hovendicks have failed to produce any factual matter to overcome the direct testimony of Ruby that the fence was a boundary fence.

With respect to the oral contract that the Hovendicks rely upon as establishing a division of the disputed lands, the majority opinion points out that such a contract is within the statute of frauds. It presents the exception to avoid the statute of frauds that we have recognized as part performance. *Davis v. Davis*, 855 P.2d 342, 346 (Wyo.1993). It then points to only those facts that demonstrate the Hovendicks took advantage of the use of the land they claimed under the oral agreement. Nothing reflects any performance by the Hovendicks of any obligation owed Ruby pursuant to the alleged oral contract. It is clear, however, that the Hovendicks are the record owners of the tract in question, and the only way they could perform their obligation under the alleged oral contract would be to convey to Ruby the part of the tract they assert was to belong to him. There is nothing in the record that would tend to show this performance on the part of the Hovendicks.

For these reasons, I would affirm the Order of the trial court that granted summary judgment to Ruby.

---

1. W.R.C.P. 56(e) provides:

 (e) *Form of affidavits; further testimony; defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.